793 So.2d 454 (2001)
STATE of Louisiana, Appellee,
v.
Clifford Lee McCLURE, Appellant.
No. 34,880-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 2001.
*455 Daryl Gold, Shreveport, Counsel for Appellant.
Richard Ieyoub, Attorney General, James M. Bullers, District Attorney, L. Charles Minifield, Assistant District Attorney, Counsel for Appellee.
Before NORRIS, PEATROSS and DREW, JJ.
*456 NORRIS, Chief Judge.
Clifford McClure appeals his conviction of aggravated battery, a violation of La. R.S. 14:34. We affirm.

Facts
The state's testimonial evidence shows that on July 4, 1999, Charles Duck was attending a party at Don Engel's home in Sarepta. The party was a 4th of July celebration and a birthday party for Engel's daughter. In attendance were several children ranging in age from 7 to 14 years old. During the course of the day, the children shot fireworks, rode a golf cart and four-wheeler, and played hide and seek. According to Jeremy Harvill, 13 years old at the time of the trial, the children had ceased shooting fireworks at about midnight and were riding the golf cart in the area.
Tommy Gore testified that he was in the bushes playing with the children when Engel's next door neighbor, McClure, told him and the children on the cart to "get the f* * * back over yonder." Gore stated that he and McClure exchanged words and McClure threatened to "kick [Gore's] ass." Gore told McClure they should "take it to the streets," and headed toward the road in front of McClure's and Engel's property.
Charles Duck and Dewayne Harvill both testified that they heard the argument and also walked toward the street. They stated that McClure walked through his house, to his truck and then carrying a gun and a stick about the size of a metal fencepost, approached the three men. Duck and Harvill both turned to tell the children behind them to go into the house when McClure hit Duck over the head with the stick. Harvill testified that he did not see McClure hit Duck, but heard a "whack," turned around and saw that Duck had fallen to the ground. Harvill further testified that when he turned around, McClure had pointed the gun in his face. McClure then backed up and went back into his house.
Duck testified that the blow "split him all the way to the skull," requiring several stitches. According to his testimony and the ER statement, Duck's medical expenses were over $1,000.
McClure disputed the men's version of the story, testifying that he was awakened by fireworks being shot at his house and went to the back yard when he heard Gore in the bushes. He testified that he told Gore to get back on Engel's property. McClure denied cursing or threatening Gore; he stated that Gore threatened him and told him to "take it to the streets." McClure stated that Gore, Duck, and Harvill then came onto his property, Gore took off his shirt and started popping it on the ground, and Harvill said "let's get him." McClure testified that because he feared for his safety, he picked up the stick and as Duck approached him, he hit Duck over the head.
McClure's wife, Cathy, had awakened when McClure walked through the house after first confronting Gore. McClure told her to call the police; however, she called Sheena Engel, the neighbor. When McClure walked back into the house after hitting Duck, he took the phone from his wife and called the police to make a noise complaint. According to the 911 records, he informed the dispatcher that a party next door was getting out of hand, he went over and asked them to hold it down but they wanted to cuss and fight him. He further stated that he "figured I'll call y'all before I go over and put an end to the party."
McClure was arrested for the aggravated battery, tried and convicted as charged by a unanimous six member jury. He was sentenced to two years at hard *457 labor, which was suspended, and placed on two years supervised probation with special conditions: he was not allowed to have contact with Duck, pay a $50 monthly probation supervision fee, perform 80 hours of community service, and pay restitution of $1,511.80 for medical bills if within the pendency of the probation a civil suit had not been concluded.
McClure appeals the conviction, arguing that the evidence was insufficient to support his conviction for aggravated battery. In particular, McClure argues that his actions were in self-defense, that the stick was not used in a manner likely to cause great bodily harm, and the testimony of the state's witnesses contained internal contradictions and conflicted with the physical evidence.

Law and Analysis
The standard of appellate review for a sufficiency of evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
Battery is the intentional use of force or violence upon another. La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. A dangerous weapon includes any gas, liquid, or other substance or instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. La. R.S. 14:2.
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person provided that the force or violence used must be reasonable and apparently necessary to prevent such offense. La.R.S. 14:19. The standard of proof when a defendant claims self-defense in a non-homicide case is preponderance of the evidence. State v. Freeman, 427 So.2d 1161 (La.1983); State v. Braswell, 605 So.2d 702 (La.App. 2d Cir. 1992). The jurisprudence does not clearly define or allocate the burden of proving self-defense. State v. Braswell, supra.
The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. State v. McBride, 00-00422, (La.App. 3d Cir.11/15/00), 773 So.2d 849; State v. Wallace, 98-2450 (La.App. 1st Cir.9/24/99), 754 So.2d 991.
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; State v. Tisby, 33,591 (La.App.2d Cir.6/21/00), 764 So.2d 209, writ denied, 00-2236 (La.6/1/01), 793 So.2d 181.
McClure argues that he was protecting himself from the unprovoked attack of three men, so any force he used against Duck was in self-defense. McClure testified that people at Engel's party were shooting fireworks at his house and he feared for his family and did not want his young children to be awakened. According to McClure, when he went out and told the group to get away from his house, he was threatened by Gore. Gore, Duck, and Harvill then came onto his property and approached him in a threatening manner. McClure testified that because he feared for his safety, he picked up the stick and *458 hit Duck over the head; McClure stated that Duck was facing him.
After McClure was arrested, Cathy called McClure's brother, Allen, to bail him out. Allen, and McClure's sister-in-law Shannon, came over to the house. Cathy, Allen and Shannon testified that they saw several fireworks and a cap on McClure's property.
Duck, Harvill, and Gore all testified that they were not on McClure's property when he approached them carrying a stick and a gun. Duck testified that when he saw the stick he turned to tell the children to get to safety; McClure suddenly hit him on the side of the head. Harvill testified that he turned to yell at the children to get into the house when he heard a "whack," and turned around to see Duck on the ground and McClure pointing a pistol in his face. All three men testified that they did not approach McClure in a threatening manner, either by gesture or words; this was corroborated by the testimony of 10-year-old Heather Allman.
From the evidence submitted, the jury could have reasonably determined that neither Duck, Harvill nor Gore made any threats, verbal or physical. McClure walked toward the three men with a stick and a gun and, without any fear for himself or his family, chose to hit a defenseless man. McClure, as the aggressor, cannot argue self-defense. This assignment of error lacks merit.
McClure argues that the state did not prove that the manner in which the stick was used was likely to cause great bodily harm; he contends that the mere fact that the use of the stick caused injury is not sufficient to prove dangerousness.
Whether a weapon is dangerous is a factual question for the jury to determine upon considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. State v. Hopkins, 96-1063 (La.App. 3d Cir.3/5/97), 692 So.2d 538; State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality "which in the manner used, is calculated or likely to produce death or great bodily harm." La.R.S. 14:2(3); State v. Bonier, 367 So.2d 824 (La.1979).
The record indicates that McClure hit Duck over the head with a three foot long piece of wood, which the jury viewed at trial As a result of the blow, Duck had to undergo medical treatment which involved several sutures and a medical bill of over $1,000. The blow was of sufficient force to knock Duck to the ground. There is no showing that the jury erred in determining the stick was used in a manner likely to cause great bodily harm. This assignment lacks merit.
Finally, McClure argues that the state's witnesses gave contradictory testimony. This court's authority to review questions of fact in a criminal case is limited to the sufficiency of the evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
Although the testimony of the state's witnesses does show some inconsistencies, they were minor and insufficient to force a rational fact finder to reject the testimony. The testimony of the state's witnesses was sufficient to prove the elements of the charged offense beyond a reasonable *459 doubt. This assignment of error lacks merit.

Conclusion
McClure's conviction and sentence are affirmed.
AFFIRMED.