799 So.2d 684 (2001)
STATE of Louisiana, Appellee,
v.
Michael Sheppard JESELINK, Appellant.
No. 35,189-KA.
Court of Appeal of Louisiana, Second Circuit.
October 31, 2001.
*687 Amy C. Ellender, Baton Rouge, Counsel for Appellant.
Richard Ieyoub, Attorney General, William R. Coenen, Jr., District Attorney, Penny Douciere, Assistant District Attorney, Counsel for Appellee.
Before BROWN, GASKINS and CARAWAY, JJ.
CARAWAY, J.
Defendant was charged with aggravated burglary and armed robbery. The state tried defendant on the armed robbery charge. A jury found defendant guilty as charged, and the trial court sentenced him to 40 years at hard labor without benefits. Defendant appeals and assigns three errors. Finding no merit to defendant's assignments, we affirm.

Facts
On July 29, 1999, Michael Sheppard Jeselink ("Jeselink") and his son, Michael Shane Jeselink ("Shane"), forced their way into the home of a 78-year-old female victim. The two men gained entry into the home after Jeselink's 17-year-old girlfriend, Kelly Cordell ("Cordell"), tricked the victim into opening the door. Before entering the home, Jeselink severed the victim's telephone line and deflated the tires on her car.
After the perpetrators entered the victim's home, a struggle between Jeselink and the victim ensued and she was injured with a crowbar. Shane pointed an air pellet pistol at the victim, threatening her with it. Jeselink and Shane coerced the victim into divulging the combination to her bedroom safe, opened the safe, and took cash and collectible coins. They also took firearms, a flashlight and a cordless phone. Jeselink knew the safe existed because he had worked for the victim as a carpenter and painter. After completing the robbery, they left the victim lying on a bed, bound and bleeding from her injuries. Even though her car had been tampered with, she was nevertheless able to drive to her son's home to get medical assistance.
Jeselink was arrested on August 4, 1999. Although he denied any knowledge of the robbery initially, he later confessed. The state proceeded to trial in October, 2000. Jeselink was found guilty of armed robbery, in violation of La. R.S. 14:64,[1] and sentenced to 40 years at hard labor without the benefit of parole, probation or suspension of sentence. Jeselink's timely motion for reconsideration of sentence was denied.
On appeal, Jeselink urges three errors: (1) that the trial court erred in denying his motion to suppress a confession; (2) that the evidence used to convict him is insufficient to support the finding of guilt beyond a reasonable doubt, because there is no proof that he was armed with a dangerous weapon; and (3) that his 40 year sentence is excessive.

Discussion

Motion to Suppress Confession
During the trial proceedings, Jeselink filed a pro se motion to suppress his confession, arguing that his statement was not given freely and voluntarily. On appeal, the defense urges that Jeselink was told *688 that if he cooperated and confessed, he would receive lenient treatment and the same sentences as Shane and Cordell.
At a hearing on a motion to suppress a confession, the state bears the burden of proving beyond a reasonable doubt the free and voluntary nature of the confession. State v. Hills, 354 So.2d 186 (La.1977); State v. Rogers, 476 So.2d 942 (La.App. 2d Cir.1985); State v. Roddy, (La.App.2d Cir.4/7/00), 756 So.2d 1272, writ denied, XXXX-XXXX (La.5/11/01), 791 So.2d 1288. A trial court's findings following a free and voluntary hearing are entitled to great weight and will not be disturbed unless unsupported by the evidence. State v. Durr, 28,197 (La.App.2d Cir.6/26/96), 677 So.2d 596; State v. English, 582 So.2d 1358 (La.App. 2d Cir.), writ denied, 584 So.2d 1172 (La.1991).
Before a confession can be introduced into evidence, the state must affirmatively prove that it was not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La. R.S. 15:451; La.C.Cr.P. art. 703(D); State v. Roddy, supra. The state must also establish that an accused who makes a statement during custodial interrogation was first advised of his Miranda rights. State v. Walker, 28,577 (La.App.2d Cir.10/4/96), 681 So.2d 1023; State v. Roddy, supra.
In State v. Jackson, 381 So.2d 485 (La.1980) and State v. Morvant, 384 So.2d 765 (La.1980), the Louisiana supreme court stated the principles under which the admissibility of a confession must be judged. As a matter of federal constitutional law, any confession obtained by any direct or implied promises, however slight, or by the exertion of any improper influence, must be considered involuntary and inadmissible. Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897); State v. Roddy, supra.
In Louisiana, the statutorily mandated test for voluntariness is not whether a confession was induced by improper external forces, but whether the confession was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises. La. R.S. 15:451; State v. Roddy, supra.
The admissibility of a confession is a question for the trial court. Id. When determining admissibility, the trial court's conclusions on the credibility and weight of testimony relating to the voluntary nature of the confession will not be overturned on appeal unless not supported by the evidence. State v. Benoit, 440 So.2d 129 (La. 1983); State v. Dailey, 607 So.2d 904 (La. App. 2d Cir.1992), citing State v. Jackson, supra; State v. Roddy, supra. We place great weight upon the trial court's factual determinations because of its opportunity to observe witnesses and assess credibility. State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082; State v. Roddy, supra.
The only issues raised by Jeselink are his claims that he was promised leniency and a shorter sentence if he cooperated. However, the record does not support these claims. A careful review of Jeselink's statement and the interrogating officers' testimony indicates that no such promises were made so as to render Jeselink's confession involuntary.
The jurisprudence has repeatedly concluded that a remark by the police telling the defendant that the officer will "do what he can or things will go easier" will not negate the voluntary nature of the confession. State v. English, 582 So.2d 1358 (La.App. 2d Cir.), writ denied, 584 So.2d 1172 (La.1991); State v. Roddy, *689 supra. In State v. Matthews, 26,550 (La. App.2d Cir.12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.6/16/95), 655 So.2d 341, this court stated:
A confession obtained by direct or implied promises, however slight, or by the exertion of any improper influence must be considered involuntary and inadmissible. However, a mild exhortation to tell the truth, or a remark that if the defendant cooperates the officer will "do what he can" or "things will go easier," does not negate the voluntary nature of the confession. Further, informing a defendant that the district attorney will be advised of any cooperation is insufficient to overcome the free and voluntary nature of a confession. (Citations omitted).
State v. Roddy, supra at 1277. See also, State v. Thomas, 30,490 (La.App.2d Cir.4/8/98), 711 So.2d 808, writ denied, 99-0331 (La.7/2/99), 747 So.2d 8; State v. Taylor, 30,310 (La.App.2d Cir.2/25/98), 709 So.2d 883.
Sheriff Bennett testified at the suppression hearing that Jeselink was held in the Richland Parish Detention Center after his arrest. A sheriff's deputy told the sheriff that Jeselink wanted to speak with him. The sheriff and his deputy then questioned Jeselink at the detention center. Before being questioned, the defendant was advised of his Miranda rights, whereupon Jeselink signed a written waiver of those rights. The record does not contain any evidence of threats, promises or coercion, nor does it support Jeselink's claim that he was promised either lenient treatment or a lenient sentence if he cooperated.
Deputy Russell testified that Jeselink asked to speak with the sheriff. Deputy Russell accompanied the sheriff to the detention center. Before any conversation ensued, Deputy Russell advised Jeselink of his Miranda rights. Both Jeselink and Deputy Russell signed the waiver of rights form. Deputy Russell further testified that he did not make any threats or promises to Jeselink, nor did he coerce a statement from Jeselink. The officers did not tell Jeselink that he would receive lenient treatment if he cooperated.
Jeselink elected not to testify or present any evidence at the motion to suppress hearing. After hearing the testimony, the trial court found that Jeselink's confession was freely and voluntarily made; therefore, the motion to suppress was denied.
We hold that the trial court did not err in finding that Jeselink's confession was given freely and voluntarily after he was advised of his constitutional rights. We note that Jeselink initiated the discussion which led to his confession. Prior thereto, the deputy sheriff advised Jeselink of his Miranda rights, which Jeselink understood and waived. No promises of leniency or of better treatment were made, nor were there any other unlawful inducements to obtain his confession. Thus, this assignment has no merit.

Sufficiency of the Evidence
Although the record does not reflect that Jeselink filed a motion for post-verdict judgment of acquittal pursuant to La. C.Cr.P. art. 821, this court will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
The defense urges that the evidence failed to show that Jeselink committed armed robbery, specifically arguing that the evidence does not show that Jeselink used a dangerous weapon when he committed the offense. Jeselink argues that an air gun is not a dangerous weapon, because he neither loaded it, nor intended to use it. Further, Jeselink claims that a crowbar is not a dangerous weapon, because it was used only as a tool to gain *690 entry into the residence. Defendant concedes, however, that a first degree robbery occurred.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in a light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La.App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
To convict a defendant of armed robbery, the state is required to prove: (1) the taking (2) of anything of value (3) from a person or in the immediate control of another (4) by the use of force or intimidation (5) while armed with a dangerous weapon. La. R.S. 14:64; State v. Guy, 97-1387 (La.App. 4th Cir.5/19/99), 737 So.2d 231, writ denied, XXXX-XXXX (La.1/7/00), 752 So.2d 175. Because Jeselink concedes that a first degree robbery[2] occurred, the only issue on appeal is whether he was armed with a dangerous weapon at the time of the robbery.
In State v. McClure, 34,880 (La.App.2d Cir.8/22/01), 793 So.2d 454, this Court held:
Whether a weapon is dangerous is a factual question for the jury to determine upon considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. State v. Hopkins, 96-1063 (La. App. 3d Cir.3/5/97), 692 So.2d 538; State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous, but includes any instrumentality "which in the manner used, is calculated or likely to produce death or great bodily harm." La. R.S. 14:2(3); State v. Bonier, 367 So.2d 824 (La.1979).
In State v. Hawkins, 99-217 (La.App. 5th Cir.7/2/99), 740 So.2d 768, the court affirmed the defendant's convictions for aggravated rape and second degree kidnaping after it found that a crowbar used in the commission of the crime was a dangerous weapon. Furthermore, the jurisprudence has long held that unworkable or unloaded guns can constitute dangerous weapons when used in a manner likely to produce death or great bodily harm. The likelihood of this serious harm can come from the threat perceived by victims. State v. Woods, 494 So.2d 1258 (La.App. 2d Cir.1986). In State v. Leggett, 363 So.2d 434, 440 (La.1978), abrogated on different grounds as recognized in State v. Anderson, 603 So.2d 776 (La.App. 1st Cir. 1992), the dangerous weapon test was met *691 where the weapon used was an air pistol or pellet pistol which could possibly kill or cause great bodily harm. The Leggett court also noted that even an unloaded weapon could be used to strike a victim.
In this case, the 78-year-old victim testified at trial that a young woman rang the victim's door bell at 9:10 p.m. on July 29, 1999, and asked to use the telephone to report an automobile accident. The victim locked her storm door and went to get her portable phone. When the victim went back to the door, two men were standing inside her house. One man wore a mask; the other man had a stocking over his head. The victim testified that Shane had a gun and that Jeselink had a crowbar. She described the length of the gun, noted that it was black in color, and stated that it was pointed at her. She was "scared to death" and began screaming. The victim also testified that Jeselink, the "man with the crowbar," tried to tape her mouth shut. She hit Jeselink's hand, then he hit her hand with the crowbar. She testified that she "bled all over the place." Lastly, the victim testified that she thought that the robbers would kill her.
Jeselink forced the victim back into her bedroom, going straight to the safe. When the victim herself could not open the safe, the robbers coerced her into divulging the lock combination. She was afraid not to cooperate, because of the gun and the crowbar. The men stole more than $1,000 cash, as well as several purses containing collectible coins. The victim testified that Shane took two loaded rifles from a wall-mounted gun rack and two loaded pistols out of a chest of drawers in the bedroom. The victim's hands and feet were taped and she was left on the bed while the robbers fled. One of the men took the woman's purse and told her that the telephone line had been cut.
In his confession, Jeselink admitted that Shane had the pistol and that he had the crowbar. He also admitted that the victim hit her hand on the crowbar.
Regardless of Jeselink's argument regarding the air gun, we find that the crowbar is a dangerous weapon; its use in this case satisfies the jurisprudential tests. Trial testimony and Jeselink's confession reveal that Jeselink stood near the victim while holding the crowbar. The crowbar was actually used as a weapon to harm the victim. Under the facts and circumstances of this case, the jury could reasonably find that the crowbar was used to intimidate and batter a frail, elderly victim, forcing her to surrender her property. Moreover, we note that the defense's argument that the subjective belief of the victim is not sufficient to prove that the pistol was a dangerous weapon is contrary to the jurisprudence. State v. McClure, supra; State v. Leggett, supra. These rulings indicate that the question of whether a weapon is dangerous is a fact question for the jury and that even an unloaded and unworkable air pistol may be held to be a dangerous weapon. Therefore, this assignment of error likewise lacks merit.

Excessive Sentence
The defense contends that a 40-year sentence for a first offender is excessive. Jeselink points out that although his codefendant carried the air pistol, no shots were fired. Also, defendant argues that even though the victim was injured by the crowbar, he acted in self defense while the victim was striking him with a broom. Jeselink asserts that the victim was not seriously harmed.
Jeselink further urges that shortly after his arrest, he cooperated with authorities and that he apologized to the victim at the hearing on the motion to reconsider sentence. Jeselink also argues that his sentence *692 is excessive when compared to the sentences received by his co-defendants.[3]
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions, is the goal of La.C.Cr.P. art. 894.1. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of the offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La. 1981); State v. Bradford, 29,519 (La. App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
There is no requirement that co-defendants be treated equally by the sentencing judge. State v. Rogers, 405 So.2d 829 (La.1981); State v. Taylor, 485 So.2d 117 (La.App.2d Cir.1986). The disparity of sentences between co-defendants is only a factor to be considered along with all of the other appropriate considerations in evaluating the contention that a sentence is excessive. State v. Quimby, 419 So.2d 951 (La.1982); State v. Jackson, 30,473 (La.App.2d Cir.5/13/98), 714 So.2d 87. The higher sentence Jeselink received is easily justified by the fact that he not only planned the armed robbery, but also influenced his two younger associates.
A trial court has wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, this court will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
Prior to imposing sentence, the trial court reviewed a pre-sentence investigation ("PSI") report. Jeselink, age 41, is a first felony offender. The trial court reviewed and considered the facts of this case. Jeselink's son received a sentence of 15 years at hard labor for aggravated burglary, 10 years at hard labor for aggravated battery, and 15 years for the armed robbery, all to be served concurrently. Cordell's charges were still pending at the time of this appeal.
*693 The victim is now afraid to stay alone. At the time of the offense, she was quite weak due to her recent heart surgery. The laceration resulting from the crowbar's blow took several weeks to heal. Treatment for her physical injuries required a four-day hospital stay. She also suffered a mild heart attack.
The PSI reveals that in 1977, Jeselink was charged with simple burglary and contributing to the delinquency of a juvenile, but the disposition of those charges is not reported. Jeselink had a misdemeanor conviction in 1981 for issuing worthless checks. The defendant also faced pending charges for simple burglary and simple escape in Richland Parish at the time of sentencing for the instant offense.
The trial court discussed Jeselink's personal history. Jeselink has a fairly steady work history, but claims to have committed the instant offense because he was destitute. The court found Jeselink's crime to be a very serious offense which created a highly explosive situation during which an elderly heart patient, in weakened physical condition, feared for her life and was injured. The trial court further found that Jeselink's actions manifested deliberate cruelty to the victim. Jeselink knew the victim was particularly vulnerable and incapable of resisting a robbery due to her advanced age and disability. Jeselink used threats and actual violence, resulting in serious harm to the victim. Defendant used a dangerous weapon and placed the victim in fear of death or great bodily harm. Furthermore, the trial court found that Jeselink was the ringleader and exerted influence on Shane and Cordell, both of whom are "youthful persons." There was no excuse or justification for the offense. Jeselink has shown little remorse.
The trial court also noted that Jeselink's actions were in part due to financial difficulties. His incarceration will probably entail further hardship for his two minor children. Because of these mitigating factors, the trial court imposed a sentence of less than one-half of the maximum allowed by law.
The trial court thoroughly explained its reasons for sentence. The trial court did not abuse its discretion. Defendant faced up to 99 years at hard labor without benefits. He was sentenced to serve 40 years without benefits, with credit for time served. Considering that Jeselink not only planned this crime, but that it was carried out against a defenseless, elderly victim, we hold that the 40 year sentence imposed by the trial court is well within its discretion. This sentence is not disproportionate to the crime committed, nor does it shock our sense of justice. As such, this assignment has no merit.

Error Patent
We have reviewed the record for errors patent and found none.

Conclusion
Based on the above, Michael Sheppard Jeselink's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] La. R.S. 14:64 reads:

A. Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon.
B. Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than ninety-nine years, without benefit of parole, probation, or suspension of sentence.
[2] First degree robbery is the taking of anything of value from the person of another by the use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon. La. R.S. 14:64.1.
[3] The defense does concede, however, that Jeselink is the one who planned this armed robbery/home invasion.