962 So.2d 1173 (2007)
STATE of Louisiana, Appellee
v.
Christopher KIRKLAND, Appellant.
No. 42,397-KA.
Court of Appeal of Louisiana, Second Circuit.
August 15, 2007.
*1174 Louisiana Appellate Project, by Sherry Watters, New Orleans, for Appellant.
Paul J. Carmouche, District Attorney, John F. McWilliams, Jr., Dhu Thompson, Assistant District Attorneys, for Appellee.
Before STEWART, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
This criminal appeal arises from the First Judicial District Court, Parish of Caddo, State of Louisiana where, after a jury trial, Christopher Kirkland was convicted as charged of second degree battery *1175 and sentenced to 10 years' imprisonment at hard labor as a second-felony offender. Kirkland now appeals. For the following reasons, the conviction and sentence is affirmed.

FACTS
On October 12, 2005, the defendant, Christopher Kirkland, and his girlfriend were in the parking lot of H & H Grocery, a convenience store in Caddo Parish, owned by husband and wife, Bobby and Ruth Coleman. Bobby, a 70-year old man, was in the store keeping Ruth company.
At some point, Kirkland went to purchase something from the store for his girlfriend. One store patron, Marla Faherty, testified that she was putting gas in her car when she saw Kirkland arguing with a woman in the store's parking lot. Faherty explained that she saw Kirkland head toward the store and "shove" the door open, nearly hitting her 11-year-old son who was already inside. Because Kirkland shoved the door open and nearly hit the child, Ruth testified she ordered Kirkland to leave the store, saying "we don't want you coming in here like that." When Kirkland did not leave the store, Ruth ordered him to leave a second time.
According to Bobby, when Kirkland did not leave the store, Bobby said "she told you to leave," but Kirkland refused again. At this point Bobby put his hand under Kirkland's arm and escorted him out of the store. Kirkland came back inside the store and Bobby escorted him out once again. This last time, Bobby had turned around and was walking back into the store. Faherty testified that she then saw Kirkland come into the store a third time, but this time Kirkland "had one fist raised in the air when he came through the door." Ruth shouted "No!," and when Bobby turned back toward the door to see what was wrong, Kirkland hit Bobby in the face. Kirkland then walked away.
Ruth called the Caddo Parish Sheriff's Office ("CPSO"), and deputies Jackie Winston and Richard Porter responded. Deputy Porter found Kirkland at his trailer home located down the street from the H & H Grocery. Kirkland told Dep. Porter that Bobby had hit him three times before Kirkland hit Bobby; Kirkland claimed that he hit Bobby in self-defense the third time. In the meantime, Bobby was transported by ambulance to the hospital. As a result of being hit in the face, Bobby suffered numerous broken bones in his face, great pain, and the swelling around his left eye caused him to have a loss of vision in that eye because of nerve damage. Both the CPSO and Ruth took pictures of Bobby's injuries after the incident.
The state charged Kirkland with second degree battery. The case was called for a jury trial on May 11, 2006. In addition to the witnesses listed above, two of Bobby's doctors testified about the nature and extent of the his wounds. After the state rested its case, Kirkland elected to testify. Kirkland testified that he did not believe that Faherty or her son were in the store. He further testified that the deputies lied about the statements Kirkland made at the time of the incident. Kirkland gave details of the convictions in his criminal history as reflected in the rap sheet provided by the state. He then gave his version of the incident. Kirkland said that the store's door was hard to open, so that is why he pushed the door open "a little harder than what [he] should have had." He stated that Bobby then looked at him and ordered him out of the store, which he did not understand because Kirkland felt Bobby had been friendly in the past. Kirkland said that Bobby then grabbed his arm from the door and pushed him away. Kirkland explained that he did not understand *1176 what was happening, so he attempted to go into the store again, at which point Bobby again grabbed Kirkland's arm and pushed him down the steps going into the store. The last time, Kirkland said that he opened the door and made yet another attempt to enter the store when:
[Bobby] grabbed the door, jerked it open and raised his fist at me. I thought that he was going to punch me, and when I-I was up on the top step when I touched his door. When I stepped back my balance come back, and he was up over me with his fist raised, and that's when I swung, because he was about to swing at me. He started jerking at me, and then that's when I swung, and it made contact.
The jury of six unanimously voted to convict Kirkland of second degree battery. Kirkland filed a motion for post verdict judgment of acquittal and new trial. The state filed a habitual offender bill charging Kirkland as a second felony offender. On September 28, 2006, the trial court denied Kirkland's motions. On that same day, Kirkland opted to plead guilty to the second felony offender bill and was then sentenced to 10 years' imprisonment at hard labor. This appeal ensued.

LAW AND DISCUSSION

Sufficiency of the Evidence
Kirkland urges that the evidence was insufficient to convict him. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, XXXX-XXXX (La.10/17/97), 701 So.2d 1333.
The Jackson standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.02/22/06), 922 So.2d 517; State v. Robertson, XXXX-XXXX (La.10/04/96), 680 So.2d 1165. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, XXXX-XXXX (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2d Cir.08/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
Louisiana R.S. 14:34.1 provides, in part:
Second degree battery is a battery committed without the consent of the victim when the offender intentionally inflicts serious bodily injury.
For purposes of this article, serious bodily injury means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death.
A conviction for this offense requires proof that the offender had the specific intent to inflict serious bodily injury. State v. Welch, 615 So.2d 300 (La.1993).
*1177 Viewing the evidence in the light most favorable to the prosecution, the testimony from Ruth, Marla Faherty, the victim and the detectives reflected that 25-year-old Kirkland deliberately hit the 70-year-old victim in the face with sufficient force to break the bones in the victim's skull. According to the medical report, the injury was sufficiently severe as to require the transport of the victim to the hospital by ambulance and the provision of extended emergency care. Further, the blood loss and swelling associated with injury also caused the victim to lose the sight in one of his eyes for a period of time. The jury had the opportunity to view the victim and Kirkland and to weigh the evidence based upon their observation.
In similar circumstances, a punch to the face has been held sufficient to uphold a verdict of second degree battery. State v. Landry, XXXX-XXXX (La.App. 4th Cir.03/31/04), 871 So.2d 1235. The multiple broken bones in the victim's face and the resulting vision loss demonstrate the tremendous force used by Kirkland and are sufficient evidence to show that he had the specific intent to inflict serious bodily injury.

Self-Defense
Kirkland claims that his actions were justified because he acted in self-defense. Louisiana R.S. 14:19 provides:
The use of force or violence upon the person of another is justifiable, when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not apply where the force or violence results in a homicide.
The standard of proof when a defendant claims self-defense in a non-homicide case is a preponderance of the evidence. State v. Robinson, 37,043 (La.App. 2d Cir.05/14/03), 848 So.2d 642.
The issue of self-defense requires a dual inquiry, an objective inquiry into whether the force used was reasonable under the circumstances and a subjective inquiry into whether the force was apparently necessary. Robinson, supra, citing State v. McClure, 34,880 (La.App. 2d Cir.08/22/01), 793 So.2d 454. A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict. La. R.S. 14:21; Id.
In this case, the victim, his wife and the unrelated witness, Faherty, all testified that the victim had escorted Kirkland out of the store and had turned away from Kirkland before Kirkland reentered the store and punched the victim in the face. This evidence shows that Kirkland, not the victim, was the aggressor. Apart from Kirkland's own testimony, there was no evidence to show that the use of force by Kirkland was necessary. The jury chose to credit the testimony of the other three witnesses over that of Kirkland, and we do not find it to be manifestly erroneous. Therefore, the evidence is legally sufficient to uphold the conviction, and this assignment of error is without merit.

Sanctions and Motion for Mistrial
Kirkland argues that the state's untimely provision of (1) photos of the victim and (2) his complete criminal history violated his due process rights. Specifically, Kirkland alleges that the trial court erred in denying the Motion for Mistrial after the state twice withheld information that was essential to his preparation for the case.
The purpose of pretrial discovery procedures is to eliminate unwarranted *1178 prejudice to a defendant that could arise from surprise testimony. State v. Mitchell, 412 So.2d 1042 (La.1982). Discovery procedures enable a defendant to properly assess the strength of the state's case against him in order to prepare his defense. State v. Roy, 496 So.2d 583 (La. App. 1st Cir.1986), writ denied, 501 So.2d 228 (La.1987). If a defendant is lulled into a misapprehension of the strength of the state's case by the failure to fully disclose, such a prejudice may constitute reversible error. However, the failure of the state to comply with the discovery procedure will not automatically command reversal. State v. Ray, 423 So.2d 1116, 1118 (La. 1982).
(1) Photos of the Victim
The day before trial, the state provided the defense with copies of the photos taken of Bobby right after the incident. Kirkland moved for sanctions against the state, asking the trial court not to allow the state to use the photos at trial. The state responded that the photos were given to the defense within "five minutes" of receiving them. In addition, the state noted that it was unaware of the existence of the photos taken by Ruth until the week prior to trial and that it had asked for a copy of these photos to give to Kirkland. The trial court expressed great concern over the timing of the disclosure but denied Kirkland's motion for sanctions, explaining that it found no actual prejudice to Kirkland from the late provision of the photos. Kirkland objected to the trial court's ruling.
On appeal, Kirkland argues that the state should have provided him with the photos of the victim sooner. The record reflects that the state asserted that it gave the photos to defense counsel shortly after receiving the photos on the day before trial. Kirkland asserts that if he had the photos in his possession prior to trial, he might have chosen to accept a plea offer rather than proceed to trial.
In State v. Marshall, XXXX-XXXX (La.09/05/95), 660 So.2d 819, 826, the supreme court explained:
Evidence is material only if it is reasonably probable that the result of the proceeding would have been different had the evidence been disclosed to the defense. A reasonable probability is one which is sufficient to undermine confidence in the outcome. This Court must provide a cumulative evaluation of the suppressed evidence, keeping in mind that [the defendant] does not have to show that, with the addition of the suppressed evidence, his trial would have resulted in acquittal or that there would be an insufficiency of the evidence to support a conviction. [The defendant] need only show that "disclosure of the suppressed evidence to competent counsel would have made a different result reasonably probable." (Internal citations omitted).
The police report from this incident states that photos of the scene were taken. The record reflects that the state only received the photos shortly before trial, and the trial court accepted the state's assertion that it provided the photos to the defense immediately after receiving them. In State v. Louviere, 2000-2085 (La.09/04/02), 833 So.2d 885, 896, cert. denied, 540 U.S. 828, 124 S.Ct. 56, 157 L.Ed.2d 52 (2003), the supreme court quoted Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."
Here, the record does not show that the state suppressed the state-created photographic evidence, only that the prosecutor himself may or may not have been dilatory *1179 in obtaining the evidence. The photos taken by the victim's family do not fall within the ambit of this rule because the family is not acting on behalf of the government. The record does not provide any further information about why the state-created photos were not produced earlier.
However, the record as a whole does not show that earlier disclosure of this evidence would have made a different result reasonably probable. The extent of the victim's injuries was well documented in discovery; the state provided Kirkland with 108 pages of the victim's medical records describing the victim's injuries in complete detail. Because the medical evidence is extensive and was fully provided by the state, Kirkland was fully apprised of the strength of the state's case long prior to trial. Furthermore, the state explained, and the trial court agreed, that the photos were turned over to the defense promptly under the circumstances. This assignment of error is therefore without merit.
(2) Rap sheet
The second alleged withholding of information came about during Kirkland's cross-examination when the state went into some detail with him about his criminal history. In this exchange, the question of Kirkland's complete criminal history arose. It was discovered during a bench conference that Kirkland had another conviction that was not included in the rap sheet provided by the state. This conviction, a 2004 simple battery offense, was apparently not known to the defense counsel. The state explained that the conviction was not known until the morning of trial and was received from the district attorney's internal file tracking sheet. Kirkland made a motion for a mistrial, urging that the state had again violated its discovery obligation. The state countered by saying that no evidence about the simple battery conviction had been presented to the jury and that it would move on with its questioning and not mention the matter. Defense counsel argued that had she known about the conviction, she "probably would have developed a different strategy" and "may not have decided to put my client on the stand" because of the similarity between the prior offense of simple battery and the charged offense of second degree battery. The trial court again expressed its concern about the lack of disclosure by the state of the additional conviction, and observed that "it would have affected possibly how defense proceeded in its strategy in presenting its side of the case or its case in chief in putting Mr. Kirkland on the stand." However, the trial court denied the motion for mistrial, finding that the state's agreement not to put the information before the jury cured the error. Kirkland objected to the trial court's ruling.
The relevant statutes include La. C. Cr. P. art. 717 which provides, "upon motion of the defendant, the court shall order the district attorney or the appropriate law enforcement agency to furnish to defendant a copy of any record of his criminal arrests and convictions that is in their possession or custody." Louisiana C. Cr. P. art. 729.3 provides:
If, subsequent to compliance with an order issued pursuant to this Chapter and prior to or during trial, a party discovers additional evidence or decides to use additional evidence and such evidence is or may be, subject to discovery or inspection under the order issued, he shall promptly notify the other party and the court of the existence of the additional evidence, so that the court may modify its previous order or allow the other party to make an appropriate motion for additional discovery or inspection.
*1180 Finally, Louisiana C. Cr. P. art. 729.5(A) provides:
If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this Chapter or with an order issued pursuant to this Chapter, the court may order such party to permit the discovery or inspection, grant a continuance, order a mistrial on motion of the defendant, prohibit the party from introducing into evidence the subject matter not disclosed, or enter such other order, other than dismissal, as may be appropriate.
The failure to provide the defendant with an accurate copy of his rap sheet may in some circumstances constitute reversible error. For example, Kirkland relies on State v. Meshell, 392 So.2d 433, 435 (La.1980), where the defendant was convicted of cruelty to a juvenile. In Meshell, the defendant, prior to trial, was told that the state had no rap sheet, but during trial and after the state had rested its case, the state disclosed to the defense that it knew the defendant had a conviction for child abuse. The defense counsel complained of the late disclosure and the defendant did not take the stand. On review, the supreme court reversed the conviction and remanded the case for a new trial, stating:
If the state had furnished defense counsel with a copy of defendant's rap sheet prior to trial, counsel might have attempted to negotiate a plea bargain by pleading his client guilty. . . . Most important, we agree with defense counsel that the state's belated compliance with his request for discovery effectively denied defendant the right to take the stand. Defense counsel stated that, prior to the state's furnishing him with a copy of defendant's rap sheet, he intended to place defendant on the stand as his sole witness; however, in view of this new development, he felt that he could not do so. He argues that had he known of defendant's rap sheet prior to trial, he would have undertaken a different defense strategy.
Meshell, at 435.
In State v. DeMoss, 582 So.2d 964 (La. App. 2d Cir.1991), this court reached a similar conclusion and reversed the conviction of a defendant who had been impeached with evidence of prior convictions over the objection of his attorney that the state failed to provide and was unable to demonstrate that it had furnished the defendant with a copy of his rap sheet.
By contrast, in State v. Morris, 28,312 (La.App. 2d Cir.08/21/96), 679 So.2d 482, this court upheld a conviction distinguishing Meshell and DeMoss in a case where the defendant was convicted after a bench trial where the state failed to provide the defendant with his rap sheet. In Morris, after the state elicited from the defendant that the he was on probation, defense counsel objected to the lack of the requested rap sheet. The trial court ordered that no information about the defendant's convictions be admitted and stated that it was not considering the defendant's prior criminal conduct in judging his credibility. On appeal this court stated:
The state's failure to comply with discovery procedures which results in prejudice to the defendant constitutes reversible error. However, the state's failure to comply with the discovery procedure will not automatically command reversal. The defendant must show prejudice in order for his conviction to be reversed. Sanctions for failure to comply with discovery motions are solely within the discretion of the trial judge and reversal is warranted only when there is an abuse of discretion and prejudice is shown. Mistrial is a drastic measure and is warranted only when substantial prejudice will otherwise result to the defendant *1181 sufficient to deprive him of a fair trial. Determining whether such prejudice has resulted is within the sound discretion of the trial judge. It is not mandatory that the trial court declare a mistrial when it is brought to the court's attention that one of the parties has not complied with a discovery request. As stated above, a mistrial is only warranted if a party is prejudiced by the other party's failure to comply with the discovery request. (Internal citations omitted).
Morris, at 484.
In the instant case, after a review of the entire record, we are convinced that the late disclosure of this conviction, although a violation of La. C. Cr. P. art. 717, did not prejudice Kirkland or deprive him of a fair trial. Unlike Meshell, Kirkland was clearly allowed to testify on his own behalf without being subject to cross-examination for the offense that was not listed on the rap sheet. More importantly, Kirkland's 2004 simple battery conviction was never put before the jury, and therefore jury taint was not an issue. Kirkland was never impeached nor could the jury have impermissibly judged his character as a result of the conviction because the jury was not aware of it. We note that Kirkland had other convictions and opted to testify to tell his side of the story. Clearly, his right to take the stand in his defense was not compromised. The state should have provided the evidence to the defense as soon as the information was discovered, but the failure to do so did not deprive Kirkland of a fair trial.[1]

Excessive Sentence
In his final assignment of error, Kirkland urges that his 10-year hard labor sentence is excessive and unjustified in light of the circumstances. Louisiana R.S. 14:34.1 provides, in part, "Whoever commits the crime of second degree battery shall be fined not more than two thousand dollars or imprisoned, with or without hard labor, for not more than five years, or both." As a second felony habitual offender, Kirkland was sentenced under La. R.S. 15:529.1(A)(1)(a) which states:
If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. . . .
Kirkland was thus subject to a hard labor sentence between 2½ years and 10 years. His 10-year sentence is the maximum under the statute.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2d Cir.06/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982); State v. Hampton, 38,017 (La. App. 2d Cir.01/28/04), 865 So.2d 284, writs *1182 denied, XXXX-XXXX (La.03/11/05), 896 So.2d 57 and 2004-2380 (La.06/03/05), 903 So.2d 452. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Haley, 38,258 (La.App. 2d Cir.04/22/04), 873 So.2d 747, writ denied, 2004-2606 (La.06/24/05), 904 So.2d 728. There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App. 2d Cir.03/01/00), 754 So.2d 392, writ denied, XXXX-XXXX (La.02/2/01), 783 So.2d 385.
In this case, the record shows that the trial court considered a pre-sentence investigation ("PSI") and took cognizance of Kirkland's age, criminal history, the victim's age, the severity of the victim's injuries and the circumstances of the crime. Kirkland has a significant prior criminal history as reflected in the PSI, including a long history of misdemeanor offenses and two prior felony convictions. At least two of Kirkland's prior probationary periods were terminated unsatisfactorily. The 25-year-old defendant hit the 70-year-old shopkeeper in the face, causing numerous broken bones and loss of vision. This is among the most serious consequences that may result from second degree battery.
Second, a sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Smith, 2001-2574 (La.01/14/03), 839 So.2d 1; State v. Dorthey, 623 So.2d 1276 (La. 1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Weaver, XXXX-XXXX (La.01/15/02), 805 So.2d 166; State v. Lobato, 603 So.2d 739 (La.1992); State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2d Cir.04/02/97), 691 So.2d 864.
This defendant has a long history of violating the law and in this instance had several opportunities to simply turn and walk away from the volatile situation of his own making rather than resorting to violence. Nothing about the 10-year sentence is shocking to the conscience or grossly disproportionate.

Errors Patent
In accordance with La. C. Cr. P. art. 920, all appeals are reviewed for errors patent on the face of the record. A review of the record herein reveals that the trial court sentenced Kirkland immediately after denying his motion for new trial, technically a violation of La. C. Cr. P. art. 873. When the defendant makes no showing of prejudice, the trial court's failure to observe article 873 is a harmless error, and there is no need to remand for resentencing. State v. Moossy, 40,566 (La. App. 2d Cir.03/10/06), 924 So.2d 485. Kirkland was not prejudiced by the trial court's failure as he made no objection on appeal, and, further, the PSI was furnished at the time of sentencing.

CONCLUSION
For the foregoing reasons, Christopher Kirkland's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] As an aside, there was another source for Kirkland's criminal history  Kirkland himself surely was aware of his own criminal record.