WILLIAMS, J.
b The defendant, Terry Wayne Sullivan, was charged by amended bill of information with aggravated second degree battery, a violation of LSA-R.S. 14:34.7, resisting an officer with force, a violation of LSA-R.S. 14:108.2, simple battery, a violation of LSA-R.S. 14:35, and simple criminal damage to property, a violation of LSA-R.S. 14:56. After a trial, defendant was found guilty of the responsive verdict of attempted resisting an officer, a violation of LSA-R.S. 14:108 and 14:27. He was found guilty as charged of the other offenses. The trial court sentenced defendant to serve 15 years at hard labor for the conviction of aggravated second degree *954 battery, three months for attempted resisting an officer, six months for simple battery and six months for simple criminal damage to property, with the sentences to be served concurrently. Defendant was also ordered to pay restitution and prohibited from contacting the victims. Defendant appeals his conviction and sentence for aggravated second degree battery. For the following reasons, we affirm the defendant’s convictions and sentences.
FACTS
The record shows that on February 7, 2012, the defendant was involved in a physical altercation at the home of his maternal grandmother and step-grandfather, Patsy and Tommy Williams. Defendant had lived with the Williams until a few months earlier, when they told him to leave after he became drunk and damaged some of their personal property. Following that incident, he resided with his paternal grandfather, James Sullivan. On the day in question, the defendant had been drinking before he went to his grandparents’ home with Michael Wimberly and James Sullivan 12to get a television. After arriving, defendant spoke with the Williams, who asked if he had been drinking. Defendant seemed angered by the question and he and Wimberly loaded the TV into the truck. Mr. Williams heard defendant yelling and went outside. As Williams walked from his porch, he was approached by defendant. Williams pushed defendant away and instructed him to leave because he was drunk. Defendant then threw Mr. Williams to the ground and his arm was cut. As he stood up, Mr. Williams’ arm began to bleed profusely because of blood thinners that he was taking due to a prior stroke. Defendant was aware of Mr. Williams’ stroke and a prior heart surgery.
Mrs. Williams then instructed Wimberly to call 911. A recording of that call was introduced as Exhibit S-2 and played for the jury. According to Wimberly, when defendant heard that instruction he stated “if I’m going to jail, going to make it worthwhile.” Defendant then pushed Mr. Williams down again and began repeatedly punching the older man. Wimberly gave the phone to Mrs. Williams, who told the 911 dispatcher that her grandson was drunk and that he was hitting Mr. Williams. She then stated that Mr. Williams was bleeding “all over the place.”
Approximately five minutes into the 911 call, the phone was passed to Wimberly, who identified himself as a friend of defendant. Wimberly stated, “he just kicked his grandpa” and that defendant was repeatedly punching Mr. Williams in the head. Wimberly later testified that defendant kicked Mr. Williams two or three times and “speared” him a number of times, referring to a form of kick in which defendant ran toward Mr, |3Williams and kicked him. Mr. Williams was kicked in the face at least once. At some point, Mrs. Williams went into the house and retrieved a baseball bat. Although she struck defendant over the back with the bat, he continued beating Mr. Williams. While trying to intervene, Mrs. Williams was thrown to the ground three times by defendant. Mr. Williams later estimated that he was punched 50 to 75 times. He did not recall whether he was kicked and stated that he was nearly unconscious and could not see due to the amount of blood in his face. During his tirade, defendant also destroyed the lattice surrounding the porch and a yard ornament.
Corporal Jim Funderburk, of the Oua-chita Parish Sheriffs Office, testified that he arrived at the scene approximately 19 minutes after the 911 call was placed and observed defendant running toward Mr. *955 Williams. Cpl. Funderburk exited his vehicle with his Taser drawn and instructed defendant to lie on the ground. Defendant lay on the ground, but jumped up and turned toward Cpl. Funderburk as he approached to handcuff defendant. In response, Cpl. Funderburk deployed his Ta-ser to subdue defendant, who was arrested and transported to the jail.
Mr. Williams was transported to the hospital. Cpl. Funderburk arrived at the hospital approximately 85 minutes later and took photographs of Mr. Williams’ injuries, which included the abrasions and torn skin of his arm and his swollen face and eye. Cpl. Funderburk testified that, upon his arrival at the hospital, Mr. Williams’ nose was still heavily bleeding. Mr. Williams testified that his eye socket was broken in two places, requiring surgery, that he had double vision for approximately two weeks afterward |4and that his eyesight remains worse than it was prior to this incident. He also sustained a broken nose, for which he sought treatment on more than one occasion due to hemorrhaging.
The defendant was charged with aggravated second degree battery upon Tommy Williams, simple battery upon Patsy Williams, resisting an officer with force or violence upon Cpl. Funderburk, and simple criminal damage to property. At the preliminary examination, Cpl. Funderburk testified that he did not observe any weapons being used during the attack, but that defendant was kicking Mr. Williams while wearing shoes, which the officer believed would aggravate any injuries. He could not recall what type of shoes defendant was wearing. The court did not find probable cause for the charged offense of aggravated second degree battery, based on the lack of evidence of a dangerous weapon, but did find probable cause for the charges of second degree battery, resisting an officer by force or violence, simple battery and simple criminal damage to property.
At the outset of the trial, defendant moved for a recess, arguing that he had not understood the state’s previous plea offer of 5 years in exchange for a guilty plea, because his counsel had not adequately explained that defendant could still be tried for aggravated second degree battery despite the court’s finding at the preliminary exam. The prosecutor explained that the state had withdrawn the offer after it was declined by defendant. The court denied the defense motion for additional time to consider a plea offer, finding that the offer had been withdrawn by the state.
Before evidence was presented at trial, the state filed a motion in | Jimine based upon a belief that defendant would seek to argue intoxication as a defense and that he should be precluded from doing so because of the failure to provide adequate notice. The defense argued that the crime of aggravated second degree battery does not require specific intent and, therefore, no notice of the defense of intoxication was required. Concluding that aggravated second degree battery is a specific intent crime, the trial court granted the state’s motion, prohibiting the defendant from asserting the defense of intoxication or requesting jury instructions regarding intoxication. The court noted that the intoxicated condition of the defendant would come out during testimony, but that the defense could not argue that the intoxication precluded the specific intent required for the crime.
After the state’s opening statement, the defense counsel waived his right to make an opening statement. Following the conclusion of the state’s case, defense counsel stated before the jury that he wished to call defendant to the stand. The jury was *956 excused and the court reminded defendant of his right to remain silent. Defendant then withdrew his request to testify. Instead, when the jury returned, the defense chose to call the defendant’s mother, Rhonda Sullivan, who stated that her son was a very caring person, who only became “boisterous” when drinking. The defense rested following the testimony of Ms. Sullivan.
The jury returned a verdict of guilty of aggravated second degree battery, as charged, and guilty of attempted resisting an officer, a responsive verdict. The misdemeanor charges of simple battery and simple criminal damage to property were tried by the court, which found defendant guilty |(jOf both offenses. A pre-sentence investigation report was ordered and showed defendant’s two prior convictions for DWI and possession of marijuana.
At sentencing, the trial court reviewed the facts of the offenses, noting the severe injuries sustained by Mr. Williams, including numerous broken bones in the face which necessitated surgery. The court emphasized the violent nature of the unprovoked attack and the familial relationship between defendant and Mr. Williams. The court noted the testimony that, despite attempts by others to intervene, defendant continued to beat Mr. Williams until law enforcement arrived. The court found that although defendant initially complied with the police officer’s instructions, he then became aggressive toward Cpl. Funderburk, requiring him to employ his Taser to subdue defendant.
The court considered the sentencing factors of LSA-C.Cr.P. art. 894.1, finding an undue risk that defendant would commit another crime during a period of suspended sentence or probation, that he was in need of correctional treatment, and that a lesser sentence would deprecate the serious nature of the offense. No mitigating factors were noted. The court found that the maximum sentence was appropriate and not grossly disproportionate to the seriousness of the offense, despite the fact that this was defendant’s first felony conviction. Defendant was sentenced to 15 years at hard labor for the conviction of aggravated second degree battery, three months without hard labor for the conviction of attempted resisting an officer, six months for the conviction of simple battery and six months for the conviction of simple criminal damage to property. The sentences were |7to be served concurrently. Defendant was ordered to pay restitution of $6,565.98 and lifetime protective orders were issued prohibiting defendant’s contact with the victims.
This appeal followed. The defendant then filed a motion with this court seeking to supplement the record with a transcript of an alleged appearance in September 2012 and defendant’s letter declining a plea offer referenced by the state at the start of trial. This court denied the defendant’s motion, finding that the district court was in a better position to address the matter, as there was no indication in the record that the court appearance took place or that the letter had been admitted into evidence. State v. Sullivan, 49,183 (La.App.2d Cir.3/21/14).
DISCUSSION
The defendant contends the evidence presented does not support his conviction. Defendant argues that the state failed to prove his specific intent to commit aggravated second degree battery or that he used his tennis shoes as a dangerous weapon.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the *957 essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great 1 ^deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 2009-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Direct evidence provides proof of the existence of a fact, for example, a witness’s testimony that he saw or heard something. State v. Lilly, 468 So.2d 1154 (La.1985). Circumstantial evidence provides proof of collateral facts and circumstances, from which the existence of the main fact may be inferred according to reason and common experience. Id. When the state relies on circumstantial evidence to establish the existence of an essential element of a crime, the court must assume every fact that the evidence tends to prove and the circumstantial evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Lilly, supra; State v. Robinson, 47,437 (La.App.2d Cir.11/14/12), 106 So.3d 1028, writ denied, 2012-2658 (La.5/17/13), 117 So.3d 918. The trier of fact is charged with weighing the credibility of this evidence and on review, the same standard as in Jackson v. Virginia is applied, giving great deference to the fact finder’s conclusions. State v. Hill, 47,568 (La.App.2d Cir.9/26/12), 106 So.3d 617.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its ^sufficiency. State v. Glover, 47,311 (La.App.2d Cir.10/10/12), 106 So.3d 129, writ denied, 2012-2667 (La.5/24/13), 116 So.3d 659; State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness in whole or in part; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840,121 S.Ct. 104,148 L.Ed.2d 62 (2000); State v. Woodard, 47,286 (La.App.2d Cir.10/3/12), 107 So.3d 70, writ denied, 2012-2371 (La.4/26/13), 112 So.3d 837.
A battery is the intentional use of force or violence upon another. LSA-R.S. 14:33. The crime of aggravated second degree battery is defined as “a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury.” LSA-R.S. 14:34.7(A). A “dangerous weapon” may include “any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm.” LSA-R.S. 14:2(A)(3).
Numerous everyday items have been held to constitute a “dangerous weapon,” including “a stick, an ink pen, rum, a tennis shoe, and a metal pipe.” State v. Pamilton, 43,112 (La.App.2d Cir.3/19/08), 979 So.2d 648, 654. In State v. Munoz, 575 So.2d 848 (La.App. 5th Cir.1991), the Fifth Circuit Court of Appeal found that rubber-soled tennis shoes, used to kick the *958 victim forcefully in the head, constituted a “dangerous weapon.” This |incourt has also found that a tennis shoe was a dangerous weapon when the victim is kicked in the head, causing the victim to bleed profusely. State v. Taylor, 485 So.2d 117 (La.App. 2d Cir.1986). Whether a weapon is dangerous is a factual question for the jury to determine upon considering the character of the weapon, by whom, upon whom, and in what manner it was used. State v. Pamilton, supra.
Criminal intent may be specific or general. State v. Fuller, 414 So.2d 306 (La.1982). Proof of specific intent is required where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence. State v. Johnson, 368 So.2d 719 (La.1979); State v. Elzie, 343 So.2d 712 (La.1977). Second degree battery and aggravated second degree battery are both crimes requiring specific intent. State v. Speed, supra. Although intent is a question of fact, it need not be proven as a fact; instead, it may be inferred from the circumstances of the transaction. State v. Fuller, supra. Specific intent exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10(1); State v. Speed, supra.
In this ease, the defendant does not contest that the first element of an aggravated second degree battery, the commission of a battery, was proven. The defense asserts there was no evidence presented to show that defendant used his tennis shoes in a manner likely to inflict great bodily harm. To support his position, defendant points to the testimony of Mrs. Williams, who did not see defendant kick Mr. Williams, and Mr. Williams, who does |n not recall whether he was kicked. However, Mrs. Williams did not see the entirety of the attack, as she entered the house at least twice, and Mr. Williams testified that he was partially unconscious and could not see due to blood in his eyes. In contrast, an eye witness who viewed the entire altercation, Michael Wimberly, informed the 911 dispatcher at the time of the offense that defendant kicked Mr. Williams at least two times, and one of those kicks was to Mr. Williams’ head.
It is not disputed that defendant was wearing tennis shoes during the attack. Whether the defendant’s tennis shoe constitutes a dangerous weapon is a factual question for the jury to determine based upon the circumstances of the offense. In this case, the jury heard the testimony regarding defendant’s behavior before and during the attack and testimony describing the victim’s injuries. The jury found credible Wimberly’s testimony that defendant kicked Mr. Williams to cause some of the injuries. This court must accord great deference to the credibility determinations made by the jury. Based on the testimony presented, we cannot say the jury was clearly wrong in finding that the tennis shoes worn by defendant during this offense were used as a dangerous weapon.
In addition, the record shows that defendant intended to inflict serious bodily injury and that the victim suffered such an injury as a result of defendant’s actions. “Serious bodily injury” means bodily injury which involves unconsciousness, extreme physical pain or protracted and obvious disfigurement, or protracted loss or impairment of the function of a bodily member, organ, or mental faculty, or a substantial risk of death. La. R.S.
11214:34.7. The injuries inflicted need not be permanent. State v. Harris, 42,376 (La. App.2d Cir.9/26/07), 966 So.2d 773.
At trial, Mr. Williams testified that he suffered extreme physical pain both during and after this attack. Both Wimberly and *959 Mrs. Williams testified to the large amount of blood lost by Mr. Williams. Photographs in evidence show abrasions to Mr. Williams’ arm and face, as well as a severely swollen eye. Mr. Williams underwent surgery in which a plate was inserted to support his eye socket and his vision had not fully recovered at the time of trial. Further, defendant continued to punch and kick Mr. Williams for at least 19 minutes despite his visible injuries and the attempts of witnesses to stop defendant. The severity of the injuries suffered and the duration of the attack support a finding that defendant intended to inflict serious bodily injury.
Based upon the evidence presented, a rational trier of fact could have found that the elements of aggravated second degree battery were proven beyond a reasonable doubt. Thus, this assignment of error is without merit.

Defense of Intoxication

The defendant contends the trial court erred in not allowing trial counsel to conduct voir dire regarding intoxication and in refusing to give the jury an instruction regarding the affirmative defense of intoxication. Defendant argues that the lack of prior notice did not result in unwarranted prejudice in this case, as the state was aware of the evidence showing that the defendant was intoxicated at the time of the offense.
When “the circumstances indicate that an intoxicated or drugged | ^condition has precluded the presence of a specific criminal intent or of special knowledge required in a particular crime, this fact constitutes a defense to a prosecution for that crime.” LSA-R.S. 14:15(2). The offense of aggravated second degree battery is a specific intent crime. State v. Speed, supra. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention. LSA-C.Cr.P. art. 726(A). Upon a failure to provide the required notice, the court may exclude the testimony of any witness offered by the defendant on the issue of such condition. LSA-C.Cr.P. art. 726(B).
Initially, we note that the trial court allowed defendant’s counsel to question prospective jurors regarding their feelings about those who become intoxicated. Thus, defendant’s contention that the trial court refused to allow his counsel to conduct voir dire regarding intoxication lacks merit.
Because the crime of aggravated second degree battery requires proof of specific intent, the intended use of the defense of voluntary intoxication to preclude the presence of such intent must be disclosed at least ten days prior to the commencement of trial. In this case, it is undisputed that the defendant’s trial counsel did not provide notice to the state that he intended to assert the defense of voluntary intoxication prior to the beginning of trial. The trial court has the discretion to exclude evidence related to the defense if proper notice is not provided. In State v. Trahan, 576 So.2d 1 (La.1990), |14the supreme court held that the trial court properly excluded evidence related to defendant’s intoxication because the record did not demonstrate that defendant gave the required notice under Article 726. The Court noted that without notice, the state could not properly prepare its case.
Here, in a similar manner, defendant’s failure to provide advance notice of the intent to assert the affirmative defense of voluntary intoxication was prejudicial to *960 the state, which was prevented from preparing the evidence tending to prove that defendant’s level of intoxication did not preclude the presence of the specific intent necessary to commit aggravated second degree battery. Consequently, the trial court properly refused to allow defendant to assert the defense of voluntary intoxication and refused to give the jury instructions on that defense. Thus, the assignments of error lack merit.

Plea Offer

The defendant contends the trial court erred in failing to grant a continuance or recess of trial to ascertain the status of a previous plea offer. Defendant argues that he should have been allowed to accept the state’s previous plea offer because his attorney failed to adequately explain that he would be tried for the offense of aggravated second degree battery.
A continuance is the postponement of a scheduled trial or hearing. A recess is a temporary adjournment of a trial or hearing that occurs after the proceeding has commenced. LSA-C.Cr.P. art. 708. In State v. Louis, 94-0761 (La.11/30/94), 645 So.2d 1144, the supreme court held that contractual principles may be helpful by analogy in deciding disputes | ^involving plea agreements. However, the Louis opinion and cases cited therein all involved the interpretation of plea agreements that were reached between the prosecuting authority and the defendant. In State v. Walker, 32,342 (La.App.2d Cir.9/24/99), 747 So.2d 133, this Court distinguished between cases that involved plea agreements reached and those in which no plea agreement was reached between the defendant and the state.
Regardless of the argument asserted by the defense, the trial court did not err in denying a continuance or recess with respect to the plea offer. First, the trial court did take time prior to jury selection to determine the status of the plea offer. At that time, the state had withdrawn the offer and wished to proceed to trial. Second, the defense argues that the trial court should have granted a continuance or recess of the scheduled trial date because the defendant did not understand the terms of the plea offer, so no agreement was reached between the defendant and the state.
The trial court determined that the defendant had refused the plea offer based upon the argument of counsel and the defendant’s letter produced by the state. That letter is not contained in the record, so this court must rely upon the trial court’s acceptance of its contents. A plea offer is revocable and the state may withdraw that offer if it is not accepted by defendant. Because the state had withdrawn the plea offer, the trial court had no reason to grant a continuance or recess on that matter. This assignment of error is without merit.

Ineffective Assistance of Counsel

The defendant contends he was denied his right to the effective | ^assistance of counsel. Defendant argues that his right to a fair trial was prejudiced because his attorney failed to give the proper notice for an affirmative defense of voluntary intoxication, waived his right to present an opening statement, incorrectly stated that the defendant would testify in the presence of the jury and failed to file any post-trial motions.
A defendant’s right to counsel is guaranteed by the federal and Louisiana constitutions. U.S. Const. Amend. VI; La. Const. Art. 1, § 13. As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia *961 ry hearing on the issues relating to counsel competence under LSA-C.Cr.P. art. 980. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Ellis, 42,520 (La.App.2d Cir.9/26/07), 966 So.2d 139, writ denied, 07-2190 (La.4/4/08), 978 So.2d 325.
In the present case, we note that defense counsel’s mistaken belief that aggravated second degree battery is not a specific intent crime and his failure to provide the proper notice to the state of the potential defense of intoxication precluded defendant from asserting an applicable defense at trial. After considering the matter, we conclude the record does not contain sufficient evidence to resolve defendant’s ineffective assistance of counsel claim on direct review. Defendant may raise this issue by PCR application. Sentencing
The defendant contends the trial court erred in imposing an excessive sentence. Defendant argues that the maximum sentence imposed is grossly 1^disproportionate to the offense because defendant is a first felony offender.
In reviewing a sentence for excessiveness, the appellate court applies a two-pronged test. First, the record must show that the trial court took cognizance of the criteria set forth in LSA-C.Cr.P. art. 894.1. The trial court is not required to list every aggravating or mitigating circumstance so long as the record reflects that it adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Watson, 46,-572 (La.App.2d Cir.9/21/11), 73 So.3d 471. The important elements which should be considered are the defendant’s personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense, and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Ates, 43,327 (La.App.2d Cir.8/13/08), 989 So.2d 259, writ denied, 08-2341 (La.5/15/09), 8 So.3d 581.
Second, a sentence violates La. Const. Art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is grossly disproportionate if, when the crime and punishment are viewed in light of the harm to society, it shocks the sense of justice. State v. Weaver, 2001-0467 (La.1/15/02), 805 So.2d 166.
The trial court is given wide discretion in the imposition of sentences within the statutory limits. The sentence imposed ■will not be set aside as excessive absent a manifest abuse of that discretion. State v. Williams, 03-3514 (La.12/13/04), 893 So.2d 7; State v. Thompson, 02-0333 (La.4/9/03), 842 So.2d 330; State v. Diaz, 46,750 (La. App.2d Cir.12/14/11), U81 So.3d 228. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. State v. Williams, supra; State v. Free, 46,894 (La. App.2d Cir.1/25/12), 86 So.3d 29.
As a general rule, maximum or near maximum sentences are reserved for the worst type of offenders. State v. Cozzetto, 2007-2031 (La.2/15/08), 974 So.2d 665; State v. McKinney, 43,061 (La.App.2d Cir.2/13/08), 976 So.2d 802. The sentence for a conviction of aggravated second degree battery is a fine of not more than $10,000 or imprisonment, with or without hard labor, for not more than fifteen years, or both. LSA-R.S. 14:34.7.
Prior to imposing sentence, the district court reviewed a presentence investigation (“PSI”) report, which showed a prior misdemeanor conviction for possession of marijuana. The trial court carefully reviewed the factors set forth in Article 894.1. The court noted the violent and continued nature of the attack, which lasted at least 19 *962 minutes. The court also focused upon the prior close, familial relationship between defendant and the victim, the grandfather of defendant. The court, in finding an undue risk that defendant would commit another offense if released, noted the statement by the victim’s daughter that defendant had threatened to kill his grandparents upon release from jail. In addition, the court found that defendant’s violent acts manifested deliberate cruelty to the victim and that defendant knew the victim was incapable of resistance due to his age and ill health.
In their statements for the PSI, both Mr. and Mrs. Williams expressed their desire that defendant be incarcerated. In his statement, defendant l1fladmitted to a problem with alcohol, which he claims was a factor in this offense, but said he had not sought treatment on his own. The court noted that defendant was a first felony offender, but pointed out that defendant repeatedly punched and kicked the defenseless victim despite his awareness of his grandfather’s vulnerable condition.
This record supports the court’s finding that any lesser sentence would deprecate the seriousness of the offense committed. Although harsh, the sentence imposed does not shock the sense of justice in light of the pain, suffering and fear inflicted on the elderly victims by defendant’s repeated attacks. Consequently, we cannot say the trial court abused its discretion in sentencing this defendant. Thus, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, the defendant’s convictions and sentences are affirmed.
AFFIRMED.