Judgment rendered May 20, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,768-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

SHAQUILLE WONYAE                          Appellant
BRADFORD

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 403,631

Honorable Christopher T. Victory, Judge

* * * * *

LOUISIANA APPEALS AND WRIT          Counsel for Appellant
SERVICE
By: Remy V. Starns
    Summer Vicknair


JAMES E. STEWART, SR.                  Counsel for Appellee
District Attorney


COURTNEY N. RAY
ALEXANDRA L. PORUBSKY
Assistant District Attorneys

* * * * *

Before PITMAN, STONE, and STEPHENS, JJ.

**PITMAN, C. J.**

Defendant Shaquille Wonyae Bradford was convicted by a jury of aggravated second degree battery and then was adjudicated a second felony offender. He was sentenced to 25 years at hard labor without benefit of probation or suspension of sentence. Defendant appeals his conviction and sentence. For the following reasons, we affirm with instructions.

**FACTS**

In September 2024, Defendant was charged with possession of a firearm or carrying a concealed weapon by a convicted felon, a violation of La. R.S. 14:95.1, and aggravated second degree battery, a violation of La. R.S. 14:34.7, in that he committed a battery with a dangerous weapon inflicting serious bodily injury upon the person of Olivia Hill in August 2024 in Caddo Parish.

A jury trial was held at which the following evidence was adduced.

Officers with the Shreveport Police Department ("SPD") were dispatched to the 1800 block of Acorn Street on the night of August 15, 2024, in response to an assault with a firearm. Cpl. Roderick Carter testified that he went to the scene around midnight and saw three houses approximately ten feet apart from each other. When he arrived, the victim, later identified as Olivia Hill, ran out of the house telling the police to hurry and that "he was inside the house." Cpl. Carter did not initially observe any of Hill's injuries but did see dark-colored stains, which appeared to be blood, on her white shirt. Her attacker, later identified in open court as Defendant, emerged from the house that Hill had just left and fled on foot. Cpl. Carter observed the attacker holding a firearm in the air in his left hand

as he ran away.  Cpl. Carter and other officers gave chase and arrested Defendant shortly thereafter.

Defendant did not have the firearm in his possession when he was apprehended, so Cpl. Carter instructed other officers to search for it.  A firearm was located and seized as evidence by Officer Marquis Loveless, who had also seen Hill run out of her house followed closely by Defendant, who was holding the firearm in his left hand.  The firearm was located along the driveway between the houses at 1800 and 1804 Acorn Street.

Olivia Hill testified that Defendant had come to her house the night before and asked her to have sex with him, which she refused.  The next night, she heard a commotion outside her father's house; and, when she went out, she saw Defendant pointing a gun at her brother.  She stated she asked what was going on, and Defendant asked her to light his cigarette.  When she obliged, he struck her on the back of the head with the gun and then hit her in the face with it.  She testified that the laceration on the back of her head was deep, but she did not seek immediate medical attention beyond that administered by the emergency medical technicians ("EMTs") who were called to the scene because she was afraid and because she did not want to leave her wheelchair-bound father.  She also testified that after the incident, she began experiencing seizures and that a physician told her the seizures resulted from the blow to her head.

Ofc. Loveless' body-camera footage and still photographs taken from it depict lacerations to the front and back of Hill's head and face, corroborating her initial statement to police and the trial testimony. Ofc. Loveless described seeing deep, bleeding lacerations behind her left ear and her cheekbone.

2

Sgt. John Madjerick, an expert in the field of fingerprint identification and comparison, obtained Defendant's fingerprints at trial and confirmed that he was the same Shaquille Bradford previously convicted of possession of Schedule II CDS, less than two grams, on July 3, 2019.

The jury found Defendant guilty of aggravated second degree battery but acquitted him on the charge of possession of a firearm by a convicted felon.

Defendant filed a motion in arrest of judgment and argued that the acquittal on the charge of possession of a firearm by a convicted felon negated the finding that he had been convicted of aggravated second degree battery while using the firearm. This motion was heard on the day of sentencing and was denied.

A habitual offender bill was filed pursuant to La. R.S. 15:529.1, which was based on the predicate crime of domestic abuse battery with child endangerment, Docket No. 366478, Caddo Parish, to which Defendant pled guilty on August 8, 2019. Defendant was sentenced to 18 months' hard labor suspended, 1 year active supervised probation, which was extended for 6 months on September 8, 2020. His probation ended March 8, 2021. After the state provided proof of this prior conviction, Defendant was adjudicated a second felony habitual offender

At the sentencing hearing, the trial court noted that the sentencing range for aggravated second degree battery is a fine of not more than $10,000 or imprisonment, with or without hard labor, for not more than 15 years, or both. As a second felony habitual offender, Defendant faced a sentencing range of "not less than one-third the longest term and not more

than twice the longest terms prescribed for a first conviction," or 5 to 30 years. La. R.S. 15:529.1(A)(1).

The trial court reviewed all the sentencing factors in La. C. Cr. P. art. 894.1 and found that Defendant had a lengthy criminal history, including the conviction for domestic violence in 2019. It noted that the crime of which he was convicted was a violent battery committed with a firearm. It found him in need of correctional treatment and that a lesser sentence would deprecate the seriousness of the crime. It found no mitigating factors. Defendant was sentenced to 25 years at hard labor without benefit of probation or suspension of sentence.[1] Defendant filed a motion to reconsider sentence, which was denied. This appeal followed.

## DISCUSSION

*Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to convict him of aggravated second degree battery because the state's theory of prosecution rested on the allegation that the dangerous weapon used was a firearm. Defendant claims the jury expressly rejected that factual premise when it acquitted him of possession of a firearm by a convicted felon. He argues that the acquittal on that charge reflects that the state failed to prove beyond a reasonable doubt that he possessed or exercised control over the firearm allegedly used in the battery offense. He argues that the conviction should be reversed because the state failed to prove an essential element of the case. He also asserts that no rational juror could simultaneously

---

[1] The minutes reflect that the sentence of 25 years is to be served without benefit of probation, parole, or suspension of sentence, but neither the aggravated battery statute nor the habitual offender statute carry a parole restriction. *See* La. R.S. 15:529.1(G).

4

conclude that he did not possess the firearm yet used that same firearm as a dangerous weapon to commit an aggravated battery; and for these reasons, the evidence was insufficient and the verdict is legally inconsistent and should be reversed.

The state argues that Defendant's acquittal on the charge of possession of a firearm by a convicted felon does not negate its case, which proved his guilt of aggravated second degree battery beyond a reasonable doubt. The jury evaluated the two charges individually, and all the elements of aggravated second degree battery were proven, i.e., that he committed a battery with a dangerous weapon while intentionally inflicting serious bodily injury.

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Smith*, 47,983 (La. App. 2 Cir. 5/15/13), 116 So. 3d 884. *See also* La. C. Cr. P. art. 821. The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess credibility or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Gilliam*, 36,118 (La. App. 2 Cir.

5

8/30/02), 827 So. 2d 508, *writ denied*, 02-3090 (La. 11/14/03), 858 So. 2d 422.

Aggravated second degree battery is a battery committed with a dangerous weapon when the offender intentionally inflicts serious bodily injury. La. R.S. 14:34.7(A). La. R.S. 14:2(A)(3) defines a dangerous weapon as "any gas, liquid or other substance or instrumentality, which, in the manner used, is calculated or likely to produce death or great bodily harm." *State v. Banks*, 48,868 (La. App. 2 Cir. 2/26/14), 134 So. 3d 1235, 1243, *writ denied*, 14-0671 (La. 12/8/14), 153 So. 3d 432.

Whether a weapon is dangerous is a factual question for the jury to determine upon considering not only the character of the weapon, but by whom, upon whom and in what manner it was used. *State v. McClure*, 34,880 (La. App. 2 Cir. 8/22/01), 793 So. 2d 454. The term "dangerous weapon" is not limited to those instrumentalities which are inherently dangerous but includes any instrumentality "which in the manner used, is calculated or likely to produce death or great bodily harm." *Id.*, *quoting* La. R.S. 14:2(A)(3).

Serious bodily injury is defined as injury which involves, *inter alia*, extreme physical pain or protracted and obvious disfigurement. La. R.S. 14:34.7; *State v. Sullivan,* 49,183 (La. App. 2 Cir. 8/13/14), 146 So. 3d 952. The injuries inflicted need not be permanent. *Id*.

Hill testified that Defendant hit her in the back of the head and in the face with the gun he was holding in his hand. Although he did not fire the gun, it still constituted a dangerous weapon calculated to produce great bodily harm and caused deep lacerations to her head, both behind her ear and to her cheekbone, resulting in extreme physical pain. Her decision not

6

to seek further medical attention that night beyond that provided by the EMTs does not indicate the lack of a serious injury. She ultimately did seek further attention and was told the occurrence of seizures after the incident could be attributed to the battery. The responding police officer witnessed blood on her white shirt and later saw the lacerations. The evidence sufficiently proves each element of the crime of aggravated second degree battery. This assignment of error is without merit.

## Consistency of the Verdict

Defendant contends that the jury's verdict is inconsistent because it acquitted him on the charge of possession of a firearm by a convicted felon but found him guilty of aggravated second degree battery. The elements of each crime are different, and a reasonable jury could listen to the evidence presented and reach the conclusion that Defendant struck Hill with a gun, a dangerous weapon he held in his hand, and still find the state failed to prove he was a felon in possession of a firearm. For this reason, this assignment of error is without merit.

## Excessive Sentence

Defendant argues that the sentence of 25 years at hard labor, near the maximum allowed, is excessive under the circumstances of this case. Because Defendant was charged with being a second felony offender, he faced a sentencing range of 5 to 30 years after conviction of aggravated second degree battery and as a habitual offender. Defendant claims the trial court did not accurately articulate the aggravating factors and failed to meaningfully consider mitigating circumstances or justify why such a lengthy sentence was necessary. Given the facts of the offense and his criminal history, he argues the sentence is grossly disproportionate to the

7

offense and represents an abuse of discretion.  He contends that the excessive sentence makes no measurable contribution to acceptable goals of punishment and is a purposeless imposition of pain and suffering.

The state argues that the sentence was entirely appropriate for the crime of which Defendant was found guilty and as enhanced by virtue of his status as a habitual offender.  It contends that Defendant has persistently engaged in violent criminal acts and flouted police intervention his entire adult life.  He has not understood the seriousness of his crimes, and the trial court did not believe he would in the future.  The state contends that the trial court did not impose the sentence in an arbitrary or capricious manner, and it does not shock the conscience.

When reviewing an excessive sentence claim, the appellate court uses a two-prong test.  First, the trial record must demonstrate that the trial court complied with La. C. Cr. P. art. 894.1. The trial court is not required to list every aggravating and mitigating circumstance, but the record must reflect that the trial court adequately considered the guidelines of La. C. Cr. P. art. 894.1.  *State v. Smith*, 433 So. 2d 688 (La. 1983); *State v. Banks*, *supra.* The trial court should consider the defendant's personal history and prior criminal record, the seriousness of the offense, the likelihood that the defendant will commit another crime and the defendant's potential for rehabilitation.  *State v. Jones*, 398 So. 2d 1049 (La. 1981).  The trial court is not required to assign any particular weight to any specific matters at sentencing.  *State v. Quiambao*, 36,587 (La. App. 2 Cir. 12/11/02), 833 So. 2d 1103, *writ denied*, 03-0477 (La. 5/16/03), 843 So. 2d 1130.  When the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary, even where there has not been full

8

compliance with La. C. Cr. P. art. 894.1. *State v. Lanclos*, 419 So. 2d 475 (La. 1982); *State v. Banks*, *supra.*

Second, the appellate court must determine if the sentence is constitutionally excessive. A sentence is excessive and violates La. Const. art. 1, § 20, if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering. *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Banks*, *supra.* A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. *Id.* A trial court has wide discretion in imposing a sentence within the statutory limits, and a sentence should not be set aside absent a showing of abuse of discretion. *Id.*

Whoever commits the crime of aggravated second degree battery shall be fined not more than ten thousand dollars or imprisoned, with or without hard labor, for not more than 15 years, or both. La. R.S. 14:34.7(C). La. R.S. 15:529.1(A)(1) provides that the sentencing range for habitual offenses is "not less than one-third the longest term and not more than twice the longest terms prescribed for a first conviction," or 5 to 30 years in this case.

The trial court adequately addressed all issues related to La. C. Cr. P. art. 894.1 and found that Defendant had a lengthy history of engaging in violence against women and children. It noted that Defendant did not seem to understand the seriousness of his crimes and that he needed to be incarcerated to prevent further bad actions. It could not find any mitigating factors which would warrant consideration; and, thus, it exercised its discretion in sentencing Defendant to 25 years at hard labor. We do not find this sentence excessive. This assignment of error is without merit.

*Error Patent*

At the sentencing hearing, the trial court sentenced Defendant to 25 years at hard labor "without the benefit of probation or suspension of sentence." However, the minutes state his sentence was to be served without benefit of probation, *parole*, or suspension of sentence. Consequently, we order that the trial court minutes be amended to reflect that the sentence was imposed without any restriction on parole eligibility.

## CONCLUSION

For the reasons set forth above, we affirm the conviction and sentence of Defendant Shaquille Wonyae Bradford.

**AFFIRMED, WITH INSTRUCTIONS FOR CORRECTION OF MINUTES.**