PITMAN, J.
| defendant Albertos Conner, Jr., was found guilty of possession of Schedule II CDS (cocaine), a violation of La. R.S. 40:967. He was sentenced to three years’ imprisonment at hard labor and fined $200. For the following reasons, Defendant’s conviction and sentence are affirmed.

FACTS

Defendant was arrested on August 22, 2013, during a reverse sting'operation performed by the Shreveport Police Department at 3010 Jackson Street in Shreveport, Louisiana.[1] Defendant entered the house and expressed his desire to purchase a “shake pack” of crack cocaine. Undercover officers posing as drug dealers sold him two “shake packs,” each containing a rock of crack cocaine, for $13. When the hand-to-hand transaction was complete, 'the undercover officer gave the arrest signal, which, for this particular sting operation, was, “That’s some good stuff. Come back and holler at me.” Once the signal was given, the arrest team entered the room and arrested Defendant for possession of cocaine.
On September 11, 2013, the state filed a bill of information charging Defendant with one count of possession of Schedule II CDS, in violation of La. R.S. 40:967. The matter was tried before a jury on December 3, 2013.
The trial was initially scheduled for December 2, 2013. Defendant’s court-appointed counsel was prepared for trial that day. The transcript from the hearing, however, indicates that Defendant was dissatisfied with his court-appointed counsel, wanted to fire her and desired to represent himself. ^Defendant’s court-appointed counsel stated that Defendant had previously rejected a plea deal of 100 days’ imprisonment. Defendant explained that he believed his court-appointed counsel “left me in peril of a trial when there was no probable cause for me to be under arrest from August 22 to today. And that’s my reasoning for wanting to be rid of her.”
Following Defendant’s request to represent himself, a lengthy colloquy ensued. The trial court thoroughly questioned Defendant and explained his right to an attorney. It asked Defendant whether he had any legal training, and Defendant responded that he was taught by attorneys to research title and that he had successfully represented himself in a prior criminal matter. He also stated he understood that the charge against him was a felony charge. The trial court explained the possible verdicts of possession of Schedule II CDS (cocaine), attempted possession of Schedule II CDS (cocaine) and not guilty and the sentencing ranges for each of those verdicts. He was further warned that the district attorney could decide to charge him as a habitual offender.
The trial court also explained to Defendant the basic trial procedures and that it could not provide any assistance to him from the bench during trial. It further noted that the rules governing procedure and evidence were to be applied equally and there would be no prejudice in favor of, or against, either him or the state.
The trial court expressed its opinion that a licensed attorney would provide better representation than Defendant’s self-representation, and Defendant responded that he did not have any faith in his attorneys. | (¡Defendant agreed to allow the trial court *213 to appoint standby counsel to serve and answer any questions he might have.
The trial court then asked Defendant if he wanted any witnesses subpoenaed, and Defendant answered that he wanted to call witnesses who could explain his “reason for being there” at the location of the drug operation. The trial court gave Defendant until noon that day to provide the necessary addresses to subpoena his witnesses. It also gave Defendant the compact disc containing the video surveillance from the undercover sting operation. The trial was to reconvene the next morning.
Prior to the trial beginning on December 3, 2013, Defendant’s standby counsel, Mr. Andes, made a motion to see the search warrant for 3010 Jackson Street to ensure that no illegal entry into the residence had taken place. The state objected, claiming that the search warrant for the premises did not relate to the possession of cocaine charge against Defendant.
Standby counsel made a motion to suppress evidence — the two rocks of cocaine— based on lack of a search warrant. Standby counsel also made a motion for a continuance. Copies of the search warrant for the 3010 Jackson Street location and supporting affidavits were filed into evidence. The state inquired about who was representing Defendant — whether he was representing himself or was being represented entirely by Mr. Andes. Mr. Andes answered, “He is representing himself. He is adopting the motions.” Defendant confirmed adopting the two motions.
| ¿The trial court denied the motion to suppress the evidence and the motion for a continuance, noting that it had signed the search warrant for 3010 Jackson Street. It stated that the warrant was supported by affidavits describing three separate drug buys at that location, that there was probable cause to search the residence and that the warrant was valid. The state objected to the search warrant being admitted into evidence, claiming it had nothing to do with Defendant’s possession of cocaine charge.
At trial, the state presented the testimony of Narcotics Agent Joel Sharpley, Shreveport Police Department. Agent Sharpley testified that a reverse sting operation is a tool used by the narcotics division after the police department has gathered intelligence from citizens, law enforcement officers and neighbors’ complaints that a residence is being used for the sale of illegal narcotics. Officers go undercover and use surveillance cameras while posing as drug dealers in order to take the persons purchasing narcotics into custody.
Agent Sharpley testified that, on August 22, 2013, he was assigned to the arrest and surveillance team at 3010 Jackson Street in Caddo Parish. He testified that he was in the living room of the home just outside the kitchen area. The surveillance cameras were set up to capture video of people entering through the back door. Defendant entered the residence through the back door, came into the kitchen, made contact with undercover narcotics Agent Stacey Coleman and-requested to purchase crack cocaine. Defendant was then provided the cocaine in exchange for $13, the arrest | fisignal was given and he was placed into custody. The cocaine Defendant purchased and the cash he used were submitted into evidence.
Agent Coleman testified that he set up the drug shop in the kitchen, where Defendant entered the residence and advised him that he wanted a “shake pack.” Agent Coleman showed Defendant the rocks of cocaine, whereupon Defendant stated that “the last time that he purchased from the residence, they were a lot bigger.” Agent Coleman further testified *214 that, after the hand-to-hand transaction took place, he gave the arrest signal and Defendant was taken into custody. The state submitted as evidence the surveillance video of the transaction taking place between Agent Coleman and Defendant.
On cross-examination, Defendant questioned Agent Coleman regarding the hand-to-hand transaction and whether he actually possessed the cocaine, claiming that the video footage is unclear as to whether he had the cocaine in his hand prior to his arrest. It was Agent Coleman’s testimony, however, that he did hand the cocaine to Defendant.
Bruce Stentz, a forensic chemist from the Northwest Louisiana Crime Lab in Shreveport, analyzed ■ the substance that Defendant purchased during the reverse sting operation and testified that it was crack cocaine.
Defendant called Quentin Ransburg to testify on his behalf. Mr. Ransburg testified that he and Defendant did carpentry work together three or four times a week and that Defendant would often go to the residence at 3010 Jackson Street at approximately 7:00 a.m. to pick him up for work. He testified that he would be at the Jackson Street residence |fibecause his friend, Jacolby Gaspard, was homeless and stayed there. He further testified that Defendant’s likely reason for going to the residence was to pick up him and Gaspard for work, not to purchase cocaine.
Defendant testified on his own behalf and denied that he was at the house to purchase cocaine. He admitted entering the house to look for his friend, but noticed something was “out of kilter.” He stated that he saw Agent Coleman and bags (of cocaine) on a plate by the door and that he spoke to Agent Coleman, asking who he was and where were Mr. Gaspard and Mr. Ransburg. Defendant testified that he never attempted to buy any cocaine from Agent Coleman. He stated that he did not leave the house as soon as he saw the bags on the table because he could tell something was wrong and he wanted to “gather information.”
The jury returned a verdict of guilty as charged of possession of Schedule II CDS (cocaine). Defendant filed motions for post-verdict judgment of acquittal and for new trial, both of which were denied. He was sentenced on December 5, 2013, to three years’ imprisonment at hard labor and fined $200. In articulating reasons for the sentence imposed, the trial court noted Defendant’s competency to stand trial:
I don’t think there is any question that you are competent to stand trial, and frankly you did a good job in your defense. You did a great job in cross-examining the witnesses. So I don’t want there to be any mistake on the record that I think you have got issues to where you are not competent to stand trial, can’t assist in your own defense. You definitely know what is going on. You definitely know how to prepare your case, which you did, definitely, assisted with your standby counsel, and frankly you did a great job cross-examining the witnesses in this case.
The trial court also noted that Defendant had mental health issues. In [7addition to his sentence, Defendant was ordered to complete a rehabilitation program and address his mental health issues while incarcerated. Defendant now appeals.
DISCUSSION
La. R.S. 40:967 provides that a person convicted of the crime of possession of a controlled dangerous substance classified in Schedule II, including cocaine, may be sentenced to imprisonment, with or without hard labor, for not more than five years, and, in addition, may be sentenced *215 to pay a fine of not more than five thousand dollars.

Waiver of representation

In appellate counsel’s brief, Defendant argues that the trial court erred when it allowed him to represent himself at trial, contending that, in order to establish a valid waiver of the right to counsel at trial, there must be a sufficient inquiry by the court to establish on the record a knowing and intelligent waiver under the overall circumstances. He asserts that the trial court should have performed further inquiry and evaluation of the circumstances in this case and should have declined his request to represent himself.
The state argues that the record in this case, as supplemented by the transcript, of the hearing containing a colloquy between the trial court and Defendant, contains ample proof that Defendant was warned of the dangers of self-representation and made a knowing and voluntary choice to represent himself.
|sU.S. Constitutional Amendments VI and XIV, as well as La. Const. Art. I, § 13, guarantee the accused in a criminal proceeding the right to assistance of counsel for his defense. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); State v. Carpenter, 390 So.2d 1296 (La.1980); State v. Shumaker, 40,275 (La.App.2d Cir.10/28/05), 914 So.2d 1156; State v. Flanagan, 32,535 (La.App.2d Cir.10/29/99), 744 So.2d 718. The right to counsel may be waived, but the accused must know of the right and intentionally relinquish the right. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). A waiver of counsel, in order that an accused may enter into pro se representation, must be clear and unequivocal. Id.; State v. Hegwood, 345 So.2d 1179 (La.1977). In order to be valid, a waiver of the right to counsel by a defendant must be made knowingly, understandingly and intelligently. Faretta, supra. Although a defendant need not himself have the skill and experience of a lawyer in order to competently and intelligently choose self-representation, he should be made aware of the dangers and disadvantages of self-representation so that the record will establish that “he knows what he is doing and his choice is made with eyes open.” Faretta, supra, citing Adams v. United States ex rel. McCann, 317 U.S. 269, 63 S.Ct. 236, 87 L.Ed. 268 (1942).
Although a defendant should be made aware of the dangers and disadvantages of self-representation, there is no particular formula which must be followed by the trial court in determining whether the defendant has waived his right to counsel. State v. Carpenter, supra; State v. Turner, 37,162 (La.App.2d Cir.10/29/03), 859 So.2d 911, writ denied, 03-3400 (La.3/26/04), 871 So.2d 347; State v. Flanagan, supra. The determination of whether a defendant knowingly and voluntarily waived his right to counsel depends on the facts and circumstances surrounding the case, including the background, experience and conduct of the accused. State v. Harper, 381 So.2d 468 (La.1980).
The adequacy of a defendant’s self-representation and legal competence are not determinative of a valid waiver of counsel. State v. Kennon, 588 So.2d 1348 (La.App. 2d Cir.1991), writ denied, 600 So.2d 634 (La.1992); State v. Held, 32,610 (La.App.2d Cir.12/10/99), 748 So.2d 608. The propriety of allowing a defendant to make this election shall not be judged by what happens in the subsequent course of that representation. Rather, it is the record made in recognizing the waiver that controls. State v. Strain, 585 So.2d 540 (La.1991); State v. Drumgole, 31,294 (La.App.2d Cir.10/28/98), 721 So.2d 956.
*216 A proper Faretta inquiry is required to permit a defendant to proceed, partially in pro se representation, with the assistance of standby counsel. A defendant does not have a constitutional right to hybrid representation. A trial court has the discretion to allow a defendant to act as his own cocounsel. State v. Mathieu, 10-2421 (La.7/1/11), 68 So.3d 1015.
On the day that Defendant’s trial was originally scheduled, the trial court conducted an adequate Faretta colloquy and determined that his waiver of the right to counsel was knowing and voluntary. Defendant |lflclearly expressed his desire to fire his appointed counsel and represent himself at trial.
Following this request by Defendant, the trial court thoroughly questioned him about his understanding of his right to counsel, his personal legal knowledge, the charges brought against him and the possible penalties and his status as a habitual felony offender. Defendant informed the trial court that he had associated with attorneys on occasion and had successfully represented himself at trial in a previous criminal matter. The trial court advised him that he would be “on his own” if he decided to proceed without counsel and that he could not receive assistance from the bench. It once again called to his attention the possible penalties that could be imposed. The trial court then provided Defendant with the option to have standby counsel, which Defendant accepted. The trial was postponed for one day, giving Defendant the opportunity to subpoena witnesses on his behalf.
Following the Faretta colloquy, the trial court honored Defendant’s request to represent himself, determining that he made a completely voluntary and intelligent waiver of his right to counsel with a sufficient understanding of all the consequences of self-representation.
This assignment, therefore, is without merit.

Ineffective assistance of counsel

In his pro se brief, Defendant argues that he had ineffective assistance of counsel in that, prior to trial, his court-appointed counsel “left me in peril of a trial.” He also asserts that his court-appointed counsel waived his 48-hour probable-cause hearing in violation of his constitutional rights.
lnThe right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by U.S. Constitutional Amendment VI. State v. Wry, 591 So.2d 774 (La.App. 2d Cir.1991). A claim of ineffectiveness of counsel is analyzed under the two-prong test developed in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
First, to establish that his attorney was ineffective, the defendant must show that counsel’s performance was deficient. This requires a showing that counsel made errors so serious that he was not functioning as the counsel guaranteed the defendant by the Sixth Amendment. Strickland, supra; State v. Grant, 41,745 (La.App.2d Cir.4/4/07), 954 So.2d 823, writ denied, 07-1193 (La.12/7/07), 969 So.2d 629.
Second, the defendant must show that counsel’s deficient performance prejudiced his defense and that, but for counsel’s unprofessional errors, there is a reasonable probability the outcome of the trial would have been different. Strickland, supra; State v. Pratt, 26,862 (La.App.2d Cir.4/5/95), 653 So.2d 174, writ denied, 95-1398 (La.11/3/95), 662 So.2d 9.
A defendant making a claim of ineffective assistance of counsel must identify certain acts or omissions by counsel which led to the claim; general statements and conclusory charges will not suffice. *217 Strickland, supra; State v. Jordan, 35,643 (La.App.2d Cir.4/3/02), 813 So.2d 1123, writ denied, 02-1570 (La.5/30/03), 845 So.2d 1067.
| 12As a general rule, a claim of ineffective assistance of counsel is more properly raised in an application for post-conviction relief (“PCR”) in the trial court than by appeal. This is because PCR creates the opportunity for a full evidentia-ry hearing under La. C. Cr. P. art. 930. When the record is sufficient, this issue may be resolved on direct appeal in the interest of judicial economy. Jordan, supra. Because the record in this case is sufficient to adequately resolve the issue of the effectiveness of Defendant’s counsel and, in the interest of judicial economy, we will address Defendant’s claims on appeal.
The record in this case does not indicate that even the first prong of Strickland was met. There is no indication that Defendant’s court-appointed counsel’s performance prior to Defendant’s decision to proceed pro se was in any way deficient. Defendant’s statements are general and conclusory, and he cites no specific act or omission by his attorney that constituted legal error. His reasons for firing his appointed counsel were not based on legal arguments upon which relief could be granted.
Therefore, this assignment of error is without merit.

Lack of probable cause

Defendant has raised several assignments of error pertaining to the officers’ lack of probable cause to arrest him. He argues that the search warrant authorizing the reverse sting operation did not establish probable cause as to his arrest because the information contained in the search warrant and the supporting affidavits did not specify his person or the drugs purchased.
1^Probable cause for an arrest exists when facts and circumstances known to the officer and of which he has reasonably trustworthy information are sufficient to justify a man of ordinary caution in the belief that the person to be arrested has committed a crime. State v. Wilson, 467 So.2d 503 (La.1985); State v. White, 543 So.2d 124 (La.App. 2d Cir.1989).
The measure of probable cause to arrest is not that a police officer has proof sufficient to convict. Probable cause is determined by the setting in which the arrest took place, together with the facts and circumstances known to the arresting officer for which he might draw conclusions warranted by his training and experience. State v. Johnson, 422 So.2d 1125 (La.1982).
Despite efforts by his court-appointed counsel and by the trial court to explain the distinction between the probable cause necessary to issue the search warrant to perform the reverse sting operation, and the probable cause needed to arrest him for the crime of possession of cocaine, Defendant failed to understand this point of law. The warrant issued to the officers gave them the authority to implement the reverse sting operation at 3010 Jackson Street. It was Defendant’s own actions which gave them probable cause to arrest him for the crime of possession of cocaine.
Defendant entered the house, asked to buy the cocaine, gave the officers $13 and took possession of the cocaine, thus establishing the probable cause necessary for his arrest. The facts and circumstances known to the undercover officers were sufficient to justify a man of ordinary 114caution in the belief that Defendant had committed the crime of possession of cocaine.
These assignments of error are, therefore, without merit.

*218
Lack of mental capacity to stand trial

In a supplement to his pro se brief, Defendant argues that he was suffering from a nervous breakdown at the time he committed the offense up until the date of his trial and, therefore, was not mentally competent to stand trial.
When a defendant is tried upon a plea of “not guilty,” evidence of insanity or mental defect at the time of the offense shall not be admissible. In the absence of a special plea of insanity, evidence of insanity or mental defect is not admissible. La. C. Cr. P. art. 651. A new basis for an objection cannot be raised for the first time on appeal. La. C. Cr. P. art. 841; State v. Cressy, 440 So.2d 141 (La.1983); State v. Sims, 40,300 (La.App.2d Cir.10/26/05), 914 So.2d 594.
Defendant did not plead not guilty by reason of insanity, and, his mental competency was never an issue. The trial court noted that Defendant was definitely competent to stand trial and, in fact, was allowed to represent himself. Although the trial court noted at sentencing that Defendant had some mental health issues, it also noted that Defendant had done a good job in representing himself.
This assignment of error is without merit.
| is Wrongful or Malicious Prosecution
Defendant argues that the district attorney failed to screen cases properly and that the public defender “joined into concert to discipline alleged law breakers without attempting to secure their rights.” He failed to brief these assignments of error.
A mere statement of an’ assignment of error in a brief does not constitute briefing of the assignment and the assignment is deemed abandoned. State v. Lee, 39,969 (La.App.2d Cir.8/17/05), 909 So.2d 672, writ denied, 06-0247 (La.9/1/06), 936 So.2d 195.
These unbriefed assignments of error are deemed abandoned.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Albertus Conner, Jr., are affirmed.
AFFIRMED.

. The reverse sting operation was performed at the location pursuant to a valid search warrant of the premises.. The affidavit in support of the search warrant contained information about three separate drug buys at the location.