MOORE, J.
Roosevelt D. Lee appeals his convictions, by jury verdict, of aggravated battery, indecent behavior with juveniles, and contributing to the delinquency of juveniles, and his sentences totaling nine years at hard labor, plus fines and default time in lieu thereof. For the reasons expressed, we amend to vacate the default time but otherwise affirm.
*1138 FACTUAL BACKGROUND
The victim, KM, was 14 years old in May 2014 and lived with her mother and aunt in the Queensborough area of Shreveport. On May 5, she phoned her uncle, JM, in Monroe, to report that her boyfriend, "Roshawn," had put his hands on her and hit her with a coat hanger. JM was surprised, not knowing that KM even had a boyfriend, and drove to Shreveport to confront Roshawn. By the time he arrived, however, he and KM decided it was better to call the police.
Corporal Clinton Grigsby was dispatched to Roshawn's house, in the Lakeside area. When he knocked on the door, the person who answered said he was not Roshawn (he claimed that Roshawn was his cousin), but Cpl. Grigsby positively identified him as KM's boyfriend, from pictures on her cellphone. Roshawn's real name was Roosevelt Lee, and he was 46 years old. Cpl. Grigsby placed him under arrest and Mirandized him; Lee denied knowing who KM was. Lee also told a sex crimes unit investigator, Det. Deandre Bell, that he did not know KM.
The next day, KM was examined by Olivia Jones, a sexual assault forensic examiner at University Health. She told Ms. Jones that while she was at his house, Lee accused her of texting with other men and told her, "I'm gonna treat you like a ho'." He then pulled his pants down, tried several times to stick his penis in her mouth, grabbed her by the neck and choked her, struck her with a coat hanger and an extension cord, and stopped only when her cellphone rang. Ms. Jones confirmed that KM had scratches around her neck and on her left flank, and bruises on her right arm and right thigh, consistent with the conduct she described. Ms. Jones took a rape kit test of KM, including an oral swab, but no DNA was recovered. She was uncertain why she had not been called to examine KM until 24 hours after the initial report.
About two weeks later, Detective Michael Jones Mirandized Lee, again; this time, Lee admitted he had met KM walking on the street about two or three months earlier, and she started coming to his house to watch movies. He insisted they were "just friends," with no sexual relationship, but admitted that while "play fighting" with coat hangers, she had hit him, and he hit her back.
The state charged Lee with indecent behavior with juveniles, R.S. 14:81 ; second degree battery, R.S. 14:34.1 ; and contributing to the delinquency of juveniles, R.S. 14:92 A(7). By amended bill of information, the state upgraded the second charge to aggravated battery, R.S. 14:34. Lee proceeded to jury trial over three days in October 2015. In addition to the facts outlined above, both KM and Lee testified extensively.
KM testified that she knew Lee as "Roshawn," and met him in February 2014 as she was walking home from school and he offered her a ride. She told him she was 14; she thought he was around 50. She went to his house that day, and then almost daily; after a few attempts at "dry humping," they started having sex regularly, and she considered him to be her boyfriend. However, they argued often, and he slapped her for refusing to have sex with him. On May 5, while she was in the bathroom, Lee searched her cellphone and saw she had a 16-year-old boyfriend. Lee got angry and called her a "whore." He grabbed her, choked her, threw her on the bed, and hit her in the head, back and buttocks with an extension cord; he then grabbed a clothes hanger and hit her on the arm and head. Next, he pulled down his pants, positioned himself over her face, and tried to make her perform oral sex on him, but she kept her mouth closed. He *1139 eventually stopped, and dropped her off near her house. He threatened her not to tell anyone what had just happened. KM added that the last time they had sex was the previous day, May 4. On cross-examination, she admitted all her bruises healed within three or four days.
KM identified a CD containing photos and audio recordings of herself and Lee, taken from her cellphone, as well as images printed from the CD.[1] She specifically identified a photo of her, taken May 5, 2014, showing a large welt on her buttocks, and one showing redness to her neck, where Lee had struck and choked her. In various audio clips, a male voice is heard to say, "Don't be taking no picture of my thing," "It's not hard," and "Come on"-according to KM, spoken by Lee when they were trying to have sex.
Lee elected to testify and gave a strikingly different account of his relationship with KM. He denied ever using the name "Roshawn" (he said his 11-year-old son has that name), and said that KM never used her real name: she said she was "NuNu." He met KM at the Save-A-Lot store on Jewella Avenue, where she and her mother were shopping, and he gave the mother a business card in case she needed a DJ for a party she was planning. KM came to his house four or five times, but only to borrow CDs or movies; there was no sexual intercourse and no inappropriate sexual contact between them. Lee admitted that he struck KM with a clothes hanger on May 5, but only because she would not stop hitting him. He testified that he is disabled, with diabetes and neuropathy, and had to defend himself. Finally, he never looked at KM's cellphone: it had a security code, and she never disclosed it.
On rebuttal, KM's mother testified that she had never met Lee, either at Save-A-Lot or anywhere else.
After deliberating under one hour, the six-member jury unanimously found Lee guilty as charged on all counts.
The court later sentenced Lee to seven years at hard labor for indecent behavior with juveniles, to a consecutive two years for contributing to the delinquency of juveniles, and to a concurrent two years for aggravated battery, for a total of nine years at hard labor. The court also imposed three concurrent fines of $1,000, with 60 days in jail in lieu of payment.
Lee filed motions for post verdict judgment of acquittal and reconsideration of sentence, both of which were denied. This appeal followed. Counsel has filed a brief advancing two assignments of error; Lee has filed a pro se brief advancing three.
DISCUSSION
Sufficiency of the Evidence
By his second counseled assignment of error, Lee urges the evidence was insufficient to support his convictions. He acknowledges that in the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a requisite factual conclusion, State v. Ford , 28,724 (La. App. 2 Cir. 10/30/96), 682 So.2d 847, writ denied , 99-0210 (La. 5/14/99), 745 So.2d 12. He contends, however, that of the state's seven witnesses, only KM had firsthand knowledge or direct evidence of the crimes of conviction; there was no physical, DNA or other scientific evidence to support her claims; and KM's testimony was conflicting and contradictory. He also contends, *1140 with respect to the aggravated battery charge, that KM's bruises went away very quickly, and hence the state failed to prove that the coat hanger and electrical cord were used in a manner "calculated or likely to produce death or great bodily harm," La. R.S. 14:2 (3).
The state responds that KM's testimony was internally consistent and reliable. Moreover, various witnesses and photos confirmed that she sustained bodily injuries in the encounter, and cellphone pictures and videos confirmed the intimate nature of her relationship with Lee.
The standard of review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia , 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) ; State v. Bryant , 2012-0233 (La. 10/16/12), 101 So.3d 429. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson , 2014-0945 (La. 6/30/15), 172 So.3d 616 ; State v. Dotie , 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied , 2009-0310 (La. 11/6/09), 21 So.3d 297. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Kelly , 2015-0484 (La. 6/29/16), 195 So.3d 449 ; State v. Taylor , 47,400 (La. App. 2 Cir. 7/18/12), 103 So.3d 405, writdenied , 2012-1898 (La. 3/8/13), 109 So.3d 355. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Robinson , 2002-1869 (La. 4/14/04), 874 So.2d 66, cert. denied , 543 U.S. 1023, 125 S.Ct. 658, 160 L.Ed.2d 499 (2004) ; State v. Freeman , 50,282 (La. App. 2 Cir. 4/13/16), 194 So.3d 1. In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Reed , 2014-1980 (La. 9/7/16), 200 So.3d 291 ; State v. Kidd , 45,638 (La. App. 2 Cir. 11/3/10), 55 So.3d 90. Such testimony alone is sufficient even where the state does not introduce medical, scientific or physical evidence. State v. Joyner , 50,740 (La. App. 2 Cir. 6/22/16), 197 So.3d 724, and citations therein ; State v. Johnson , 96-0950 (La. App. 4 Cir. 8/20/97), 706 So.2d 468, writ denied , 98-0617 (La. 7/2/98), 724 So.2d 203, cert. denied , 525 U.S. 1152, 119 S.Ct. 1054, 143 L.Ed.2d 60 (1999). This principle is equally applicable to the testimony of sexual assault victims. State v. Joyner , supra ; State v. Seaton , 47,741 (La. App. 2 Cir. 4/10/13), 112 So.3d 1011, writ denied , 2013-1056 (La. 11/15/13), 125 So.3d 1102.
Indecent behavior with juveniles is defined, inter alia , as the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of 17, where there is an age difference of greater than two years between the two persons, and is committed with the intention of arousing or gratifying the sexual desires of either person. Lack of knowledge of the child's age is not a defense. La. R.S. 14:81 A(1).
KM testified that she was born in April 2000; Lee testified that he was born in April 1968. This obviously proves that in May 2014 KM was under the age of 17, and Lee was more than two years her senior. KM testified unequivocally that they had frequent sexual encounters between February and May 2014, describing how the relationship started and evolved; crucially, her testimony was substantially similar to her statements to police detectives, to Nurse Jones and to her uncle. This consistent testimony was sufficient to *1141 prove that Lee committed a lewd or lascivious act on her person. In addition, the photos and audio clips from her phone corroborated that they were frequently together. The absence of DNA from her oral swab is not exculpatory, in light of her testimony that he never successfully ejaculated in her mouth on May 5. Finally, the jury could reasonably reject Lee's self-serving and improbable claim that he brought KM to his bedroom multiple times but never had sex with her. The evidence is sufficient to support this conviction.
Contributing to the delinquency of juveniles is defined, inter alia , as the intentional enticing, aiding, soliciting, or permitting, by anyone over the age of 17, of any child under the age of 17, to perform any sexually immoral act. La. R.S. 14:92 A(7).
At the risk of redundancy, we reiterate KM's candid testimony that she and Lee engaged in various sexual acts-vaginal intercourse, forced oral sex, "dry humping." Her testimony was substantially similar to the statements she gave to police detectives and Nurse Jones; her cellphone pictures and recordings showed her intimacy with Lee; and reasonable jurors using their human experience could rationally reject Lee's alternative account. The evidence is sufficient to support this conviction.
Aggravated battery is defined as a battery committed with a dangerous weapon. La. R.S. 14:34. A dangerous weapon includes any instrumentality which, in the manner used, is calculated or likely to produce death or great bodily harm. R.S. 14:2 A(3). Whether a weapon is dangerous is a factual question for the jury to determine, considering not only the character of the weapon, but by whom, upon whom, and in what manner it was used. State v. McClure , 34,880 (La. App. 2 Cir. 8/22/01), 793 So.2d 454. Numerous everyday items have been held to constitute a "dangerous weapon," in the manner used. State v. Sullivan , 49,183 (La. App. 2 Cir. 8/13/14), 146 So.3d 952 (tennis shoes worn while kicking the victim); State v. Pamilton , 43,112 (La. App. 2 Cir. 3/19/08), 979 So.2d 648, writ denied , 2008-1381 (La. 2/13/09), 999 So.2d 1145 (paint can and bourbon bottle); State v. Tyner , 41,937 (La. App. 2 Cir. 2/28/07), 953 So.2d 865 (metal pipe); State v. Malhiot , 41,175 (La. App. 2 Cir. 8/23/06), 938 So.2d 1158, writ denied , 2006-2352 (La. 4/27/07), 955 So.2d 682 (rum doused out of a bottle onto the victim's head, with a threat to set it on fire); State v. McClure , supra (a wooden stick the size of a metal fencepost); State v. Johnson , 598 So.2d 1152 (La. App. 1 Cir.), writ denied , 600 So.2d 676 (La. 1992) (red ink pen); State v. Munoz , 575 So.2d 848 (La. App. 5 Cir.), writ denied , 577 So.2d 1009 (La. 1991) (rubber-soled tennis shoe worn while kicking the victim).
KM firmly testified that Lee discovered she had a younger boyfriend, got mad, and beat her about the head, back, arms and posterior with a clothes hanger and a heavy extension cord. KM's uncle, Cpl. Grigsby and Nurse Jones all saw the bruises, and the photos depicted some of them. Lee even admitted using the clothes hanger on her, claiming self-defense. On this record, the jury was entitled to find that the coat hanger and extension cord, in the manner used, were calculated or likely to produce great bodily harm. The evidence is sufficient to support this conviction.
This assignment of error lacks merit.
Excessive Sentences
By his first counseled assignment of error, Lee urges the court erred by imposing harsh and excessive sentences totaling nine years at hard labor. He argues that the district court failed to consider the applicable mitigating factors, such as his lack of a significant criminal history and his severe health conditions, including diabetes *1142 and neurological disease. He also submits that the court should have considered his social history, age, contributions to society, and his family.
The state responds that the sentences are not excessive, given the vulnerability of the victim, the age of the defendant, and the fact (noted by the district court) that he could have been charged with more serious crimes, including carnal knowledge, sexual battery, or even rape.
Appellate review of sentences for excessiveness is a two-pronged inquiry. First, the record must show that the court complied with La. C. Cr. P. art. 894.1. The court need not list every aggravating or mitigating factor so long as the record reflects that it adequately considered the guidelines. State v. Marshall , 94-0461 (La. 9/5/95), 660 So.2d 819. When the record shows an adequate factual basis for the sentence imposed, remand is unnecessary even in the absence of full compliance with the article. State v. Lobato , 603 So.2d 739 (La. 1992). No sentencing factor is accorded greater weight by statute than any other sentencing factor. State v. Taves , 2003-0518 (La. 12/3/03), 861 So.2d 144.
The second prong is constitutional excessiveness. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless imposition of pain and suffering. State v. Dorthey , 623 So.2d 1276 (La. 1993). A sentence is deemed grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice or makes no reasonable contribution to acceptable penal goals. State v. Guzman , 99-1753 (La. 5/16/00), 769 So.2d 1158. The sentencing court has wide discretion in imposing a sentence within statutory limits, and such a sentence will not be set aside as excessive in the absence of manifest abuse of that discretion. State v. Williams , 2003-3514 (La. 12/13/04), 893 So.2d 7.
Maximum sentences are usually reserved for the worst offenders committing the most serious violations of the charged crimes. State v. Fruge , 2014-1172 (La. 10/14/15), 179 So.3d 579.
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively. La. C. Cr. P. art. 883. Although concurrent sentences are presumed for such offenses, the sentencing court retains the discretion to impose consecutive sentences in cases where the offender's past criminality or other circumstances justify treating him as a grave risk to the safety of the community. State v. Walker , 2000-3200 (La. 10/12/01), 799 So.2d 461. Concurrent sentences arising out of a single course of conduct are not mandatory, and consecutive sentences for such offenses are not necessarily excessive. State v. Williams , 445 So.2d 1171 (La. 1984) ; State v. Lynn , 50,575 (La. App. 2 Cir. 5/18/16), 196 So.3d 607, and citations therein.
The district court did not order a presentence investigation report, but stated that it had reviewed the Art. 894.1 factors and the facts of the case. It specifically noted that Lee was 46 years old, and KM just 14, when the offense occurred; she was especially vulnerable given the apparent lack of parental guidance in her life; and Lee "preyed" on her while she was walking home from school. Crucially, on these facts the state could have charged Lee with much more serious crimes, including sexual battery, carnal knowledge, or rape; this justified imposing the maximum sentences for indecent behavior with juveniles and contributing to the delinquency *1143 of juveniles. We find the district court adequately considered the Art. 894.1 factors and the facts of the case.
Indecent behavior with juveniles, when the victim is not under the age of 13, is punishable by not more than seven years, with or without hard labor, and a fine of up to $5,000. La. R.S. 14:81 H(1). Lee obviously received the maximum for this offense, but in light the great age difference and KM's testimony that the lewd and lascivious acts of sexual intercourse occurred frequently for over two months, the district court did not abuse its discretion in finding him a "worst offender" and sentencing him accordingly.
Contributing to the delinquency of juveniles, when the conduct involved is performing any sexually immoral act, is punishable by not more than two years, with or without hard labor, and a fine of up to $1,000. La. R.S. 14:92 D. Again, Lee received the maximum, but given the prolonged incidence of his conduct, we cannot say the court abused its discretion.
We also find no abuse of discretion in directing these sentences to be consecutive: although it was one course of conduct, Lee engaged KM in many, many acts of indecent behavior and enticing her to perform sexually immoral acts over their three-month relationship. The court adequately justified this sentencing choice.
Aggravated battery is punishable by not more than 10 years, with or without hard labor, and a fine of up to $5,000. La. R.S. 14:34 B. The sentence imposed was on the lower end of the range and probably reflects the court's appreciation that KM's injuries were minimal, consisting of bruises that fully healed within three or four days. We perceive no abuse of discretion.
In addition to the hard time, the district court ordered Lee to pay concurrent fines of $1,000 and 60 days in jail in default.[2] An indigent defendant cannot be subjected to default time in lieu of payment of a fine, costs or restitution. Bearden v. Georgia , 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983) ; State v. Roebuck , 94-1127 (La. 6/30/95), 657 So.2d 1009. Indigence may be discerned from the record. State v. Pratt , 50,152 (La. App. 2 Cir. 12/30/15), 184 So.3d 816, writ denied , 2016-0123 (La. 1/25/17) 215 So. 3d 262, and citations therein. This court considers a defendant indigent when he is represented at trial by an indigent defender's office or a court-appointed attorney, and on appeal by the Louisiana Appellate Project. State v. Fontenot , 51,072 (La. App. 2 Cir. 1/11/17), 211 So.3d 1236, and citations therein. Lee meets each of these criteria, and thus his indigence is apparent from the record. We will therefore vacate the portion of the sentence ordering 60 days' jail time in default of payment of the fines.
In all other respects, the sentences are affirmed.
Denial of Self-Representation
By his first uncounseled assignment, Lee urges the court denied his Sixth Amendment right to proceed pro se, under Faretta v. California , 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975). He contends he unequivocally invoked his right on October 22, 2015, by addressing the court, "I would like to file oral motion of pro se. I pro se myself." The court advised him to "stick with" his attorney, as the state had only one witness left; Lee complained, "But we fighting [sic ], judge." After further colloquy with the court, Lee agreed, "For the record then, I cannot pro se myself," and the court concluded, "No, *1144 you need to keep [your counsel]." Lee now contends this violated his right of self-representation.
The right to counsel may be waived, but the accused must know of the right and intentionally relinquish it. Faretta v. California , supra. For a defendant to enter into self-representation, his waiver of counsel must be clear and unequivocal. State v. Hegwood , 345 So.2d 1179 (La. 1977). There is no particular formula which must be followed by the trial court in determining whether the defendant has knowingly and intentionally waived counsel. State v. Carpenter , 390 So.2d 1296 (La. 1980). A defendant who waits until after the commencement of trial to assert for the first time his right to represent himself, after having acquiesced in representation by an attorney throughout pretrial procedures and the start of trial, cannot thereafter successfully assert that right unless he makes a showing that the prejudice to his legitimate interests overbalances the potential disruption of the proceeding already in progress. State v. Hegwood , supra ; State v. Yates , 44,391 (La. App. 2 Cir. 7/1/09), 15 So.3d 1260, writ denied , 2009-2096 (La. 8/18/10), 42 So.3d 398.
Lee raised his motion for self-representation well into the third day of trial , when the state had almost completed its case-in-chief. He had acquiesced in representation through 16 months of pretrial discovery and motions, through jury selection and the cross-examination of six witnesses, including KM. His request for self-representation was facially untimely. State v. Hegwood , supra ; State v. Yates , supra. Moreover, Lee disclosed, on questioning by the court, that he made this motion because his appointed counsel refused to ask a witness, Det. Bell, a question pertaining to discovery in Lee's civil suit against the detective. This falls far short of proving a legitimate interest that would outweigh the risk of disrupting the trial. The district court did not err in denying Lee's motion. This assignment lacks merit.
Ineffective Assistance of Counsel
By his second uncounseled assignment, Lee urges he was denied his Sixth Amendment right to effective assistance of counsel, as a result of a conflict of interest between his court-appointed counsel and himself. He argues that a conflict of interest may result in ineffective assistance, under Strickland v. Washington , 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that he never waived his right to conflict-free counsel, knowingly, intelligently, or otherwise. He also provides a long exposition of the funding crisis afflicting Louisiana's public-defender system, suggesting that all public defense is inadequate.[3]
The right of a defendant in a criminal proceeding to the effective assistance of counsel is mandated by the Sixth Amendment to the U.S. Constitution. State v. Wry , 591 So.2d 774 (La. App. 2 Cir. 12/4/91). Courts assess any claim of ineffective assistance under the two-prong test developed by the U.S. Supreme Court in Strickland v. Washington , supra : whether counsel's performance was deficient, and whether the deficient performance prejudiced the defense. A defendant asserting ineffective assistance of counsel must identify certain acts or omissions of counsel to support the claim; general statements and conclusory charges will not suffice. Strickland v. Washington , supra ;
*1145 State v. Conner , 49,351 (La. App. 2 Cir. 11/19/14), 152 So.3d 209 ; State v. Jordan , 35,643 (La. App. 2 Cir. 4/3/02), 813 So.2d 1123.
On close examination, we find that Lee has identified not one single act or omission in support of his general claim that counsel was ineffective. The fact that he may have disagreed with counsel's decision not to cross-examine Det. Bell about matters of discovery in a civil suit falls far short of establishing a genuine conflict of interest and totally fails to establish any prejudice. He also has not specified any act or procedure, in or out of court, that was denied him because of budget constraints. This assignment lacks merit.
Improper Jury Instruction
By his third uncounseled assignment, Lee urges the district court erred in giving a constitutionally deficient jury instruction regarding reasonable doubt. He argues that the charge was "essentially identical" to the one held unconstitutional in Cage v. Louisiana , 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990).
The jury charge defined "reasonable doubt" as follows:
Reasonable doubt is doubt based on reason and common sense and is present when, after you have carefully considered all of the evidence, you cannot say that you are firmly convinced of the truth of the charge.
Contrary to Lee's assertion, this instruction does not suggest that in order to be "reasonable," doubt must create "grave uncertainty" or rise to a level of "moral certainty," points found to overstate the burden in Cage v. Louisiana , supra. Instead, the charge is identical to that approved by the Louisiana Supreme Court in State v. Harris , 2001-2730 (La. 1/19/05), 892 So.2d 1238, cert. denied , 546 U.S. 848, 126 S.Ct. 102, 163 L.Ed.2d 116 (2005), affirmed by this court in State v. Jasper , 28,187 (La. App. 2 Cir. 6/26/96), 677 So.2d 553, writ denied , 96-1897 (La. 2/21/97), 688 So.2d 521, and used as a model charge by Professors Cheney Joseph and P. Raymond Lamonica, Criminal Jury Instructions & Proceedings , 17 La. Civ. L. Treatise, 3 ed., § 3.3 (2016). The instruction was correct. This assignment lacks merit.
CONCLUSION
For the reasons expressed, Roosevelt D. Lee's convictions are affirmed. His sentences are amended to vacate the imposition of 60 days' jail time in default of the payment of fines, but are otherwise affirmed.
CONVICTIONS AFFIRMED. SENTENCES AMENDED TO VACATE DEFAULT TIME, BUT OTHERWISE AFFIRMED .

The recordings were actually video clips but, KM said, she took them in the dark and they had no video component. The audio portions were played at trial.

The transcript seems to indicate the fines were applied only to the indecent behavior and contributing to the delinquency charges, but the minute entry states that the fine also applied to the aggravated battery charge.

These seven pages of Lee's pro se brief appear to be paraphrased, if not directly copied, from the petition in Joseph Allen, et al. v. John Bel Edwards, et al. , Docket No. 655,079, seeking class certification, declaratory judgment and injunctive relief, filed in the 19th Judicial District Court (East Baton Rouge) on February 6, 2017.